Nick Casper (State Bar No. 244637)
**CASPER, MEADOWS, SCHWARTZ & COOK**
A Professional Corporation
2121 North California Blvd., Suite 1020
Walnut Creek, California  94596
Telephone:  (925) 947-1147
Facsimile:   (925) 947-1131

Attorneys for Plaintiffs ERIKA GREGORY and
LOREN MOLLNER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ERIKA GREGORY and LOREN MOLLNER, | CASE NO.: 2:13-CV-00320-KJM-KJN |
|---|---|
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| CITY OF VALLEJO; former VPD CHIEF ROBERT NICHELINI, individually and in his official capacity; VPD OFFICER CHASE CALHOUN, individually; and DOES 1 through 50, | Judge: Hon. Kimberly J. Mueller DATE: August 22, 2014 TIME:  10:00 a.m. CRTRM:  3, 15th Floor |
| Defendants. | |

Plaintiffs ERIKA GREGORY and LOREN MOLLNER submit the following Response to Defendants' Separate Statement of Undisputed Facts in Support of Opposition to Motion for Summary Judgment as follows:

| **CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|
| 1.   In 2007, Officer Chase Calhoun was hired as a police cadet (a non-sworn employee) by VPD.  **Evidence:**  Deposition of Chase Calhoun, 12:10-13, attached as Exhibit A to the | 1.  Undisputed. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN                Page 1
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Declaration of Furah Z. Faruqi. | |
| 2. | Officer Chase Calhoun's police cadet duties consisted of working with the traffic division, providing security at Mare Island and other adjunct locations.<br><br>**Evidence:** Deposition of Chase Calhoun, 12:10-13, 12:16-23, attached as Exhibit A to the Declaration of Furah Z. Faruqi. | 2. Undisputed. |
| 3. | Officer Chase Calhoun attended the Alameda County Sheriff's Department Police Academy from 2009-2010.<br><br>**Evidence:** Deposition of Chase Calhoun, 13:2-10, attached as Exhibit A to the Declaration of Furah Z. Faruqi. | 3. Undisputed. |
| 4. | After completing the academy, Officer Chase Calhoun was employed by the Alameda County Sheriff's Department as a Sheriff's Deputy.<br><br>**Evidence:** Deposition of Chase Calhoun, 14:21-15:1, attached as Exhibit A to the Declaration of Furah Z. Faruqi. | 4. Undisputed. |
| 5. | During Officer Chase Calhoun's tenure at the Sheriff's Department, he received in-depth training on how to act when encountering a domestic animal, including defensive tactics.<br><br>**Evidence:** Deposition of Chase Calhoun at 22:10-24:10, attached as Exhibit A to the Declaration of Furah Z. Faruqi. | 5. Disputed. Calhoun had a vague recollection of his training, and could not remember what he learned through the Alameda County Sheriff's Office or through personal experience. The characterization that Calhoun received "in depth" training on how to act when encountering a domestic animal is unsupported by Calhoun's testimony.<br><br>**Evidence:** Deposition of Chase Calhoun ("Calhoun Depo"), Ex 4 to Declaration |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | of Nick Casper in Support of Plaintiffs' Opposition ("Casper Decl") at 22:10-24:10, 70:18-25, 75:17-76:12. |
| 6. | This training taught Officer Chase Calhoun to identify the differences between an aggressive dog and a non-aggressive dog.<br><br>**Evidence:** Deposition of Chase Calhoun at 22:10-24:10, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 6. Disputed. Calhoun could not recall if what he learned regarding recognizing animal aggression was from training or from "personal experiences."<br><br>**Evidence:** Calhoun Depo at 22:10-24:10, 70:18-25, 75:17-76:12. |
| 7. | Officer Chase Calhoun learned that an aggressive dog exhibits one or more of the following attributes: "a straightened tail, as opposed to a wagging tail, raised hair, snarling and growling, and showing its teeth."<br><br>**Evidence:** Deposition of Chase Calhoun at 22:10-24:10, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 7. Disputed. Calhoun could not recall if what he learned regarding recognizing animal aggression was from training or from "personal experiences."<br><br>**Evidence:** Calhoun Depo at 22:10-24:10, 70:18-25, 75:17-76:12. |
| 8. | In 2011, Officer Chase Calhoun departed Alameda County and joined VPD.<br><br>**Evidence:** Deposition of Chase Calhoun at 14:21-15:9, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 8. Undisputed. |
| 9. | Upon arrival, at the Vallejo Police Department, Officer Chase Calhoun began an intensive field training program.<br><br>**Evidence:** Deposition of Chase Calhoun at 16:6-12, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 9. Disputed to the extent that the training is characterized as "intensive." Calhoun only testified that that the field training program lasted five months with a couple weeks of orientation.<br><br>**Evidence:** Calhoun Depo at 16:6-12. |
| 10. | After Officer Chase Calhoun completed the | 10. Undisputed. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | field training program, he was assigned to Patrol.<br><br>**Evidence:** Deposition of Chase Calhoun at 18:19-25, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | |
| 11. | During Officer Chase Calhoun's patrol assignment, he received several commendations.<br><br>**Evidence:** Deposition of Chase Calhoun at 20:16-22, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 11.  Disputed to the extent that this implies Calhoun was an exemplary police officer.  He was terminated from VPD after a little more than two years of service, and was called "unfit to be a police officer" by former Chief Kreins, after Calhoun was found to be having sexual intercourse with a woman, while on duty, and in remote locations.  His course of conduct, as well as his response to the investigation, evidenced a lack of credibility and serious failures in judgment.<br><br>On December 2, 2013, Calhoun was terminated from VPD.<br><br>The termination was the result of an Internal Affairs Investigation ("IA"), conducted by Lieutenant Sid Dejesus ("Lt. DeJesus") into Calhoun's misconduct ranging from March 2012 until August 2013, during which time Calhoun was having sexual contacts with a woman, ▮▮▮▮▮▮▮▮▮▮▮▮, while Calhoun was on his patrol shifts, in remote locations, and frequently in his patrol vehicle.<br><br>▮▮▮▮ ended the relationship and notified VPD of Calhoun's wrongdoing in August 2013 after she discovered that not only had Calhoun been married to another woman since September 2012, of which ▮▮▮▮ was unaware, but that Calhoun was also seeing another woman during this |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | timeframe, █████ |
| | | The IA charged Calhoun with seven violations of department policy; all seven charges were sustained by three superior officers, including Chief Kreins. |
| | | Chief Kreins, in his Notice of Discipline, states, "The nature and extent of you (sic) misconduct is shocking, which misconduct clearly was unbecoming and brought into disrepute the Department and its other personnel.  Your actions demonstrate serious, repeated and perplexing failures in judgment that make you unfit to be a police officer." |
| | | Lt. DeJesus interviewed Calhoun, and Calhoun confirmed he began a sexual relationship with ████ in March 2012. |
| | | Lt. DeJesus remarked in the IA Report that "Officer Calhoun appeared to me to have selective memory loss in relation to the frequency of his sexual contacts with ██████████, and specific dates related to the same." |
| | | Lt. DeJesus stated that "Officer Calhoun would attempt to minimize the time that it would take for him to complete these sexual acts by describing the duration of time as lasting only 10 to 15 minutes at a time." |
| | | Calhoun did confirm that he would take █████ to Mare Island for these encounters. |
| | | Lt. DeJesus states that Calhoun appeared "to minimize the amount of times he and █████ would actually have sexual intercourse while in a police car on Mare Island . . ." |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Calhoun only admitted to taking ▇ to the Mare Island Training Facility ("MITC") after Lt. DeJesus confronted him with a photograph of the location.

When asked about having sex with ▇ at another remote location (VPD Traffic Office), Calhoun responded, "I've got to be honest, I can't recall having sex there."

Calhoun denied missing Calls for Service, despite the statement of Sergeant B. Clark ("Sgt. Clark") that it was an ongoing problem for Calhoun.

Calhoun confirmed that he started a sexual relationship with ▇ after pulling her over for a traffic violation, but stated he only saw her while off-duty, despite his pattern of behavior with ▇.

DeJesus could not corroborate Calhoun's story because ▇ would not return Lt. DeJesus's calls.

From April 2012 through February 2013, ▇ lived at ▇ Santa Clara Street.

From March 2, 2012 through January 9, 2013, Calhoun worked frequently as a solo beat officer assigned to "Beat 6," which Lt. DeJesus found of significance because Beat 6 is in close proximity to ▇ house on Santa Clara Street.

Calhoun was working as a solo beat officer assigned to "Beat 6" on May 16, 2012 when he shot and killed Belle.

During the time ▇ lived on Santa Clara Street, she and Calhoun had sexual |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN   Page 6
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | intercourse while he was on duty once or twice a week.<br><br>During this timeframe, the IA revealed that Calhoun took ███ to remote locations to have sex while on his shift, including to a recycling center on Mare Island and to MITC<br><br>Lt. DeJesus interviewed Sgt. Clark as part of the IA.<br><br>The IA states, "Sergeant Clark spoke of Officer Calhoun having 'routinely' missed 'Calls for Service,' and how dispatch would need to 'advise a second time' at which point Officer Calhoun would then answer for his designated CFS."<br><br>In Lt. DeJesus's findings of a violation of Availability of Duty (VPD General Order B-1, III, B1.4), he states:<br>"During the course of the investigation, I was able to confirm the actual locations where Officer Calhoun would drive ███ ████████ for the purpose of having sexual intercourse. These locations were established to be in remote areas concealed from the general public where Officer Calhoun could assure himself of the privacy he would need to complete these sexual encounters. The location on Mare Island near Alco Recycling, which is located on the furthest North-West corner of the Island, the PG&E substation in Glen Clove, and Gilcrest, would necessarily take Officer Calhoun out of service for extended periods and very likely resulted in missed or delayed responses to Calls for Service as confirmed by Sergeant B. Clark.<br><br>Officer Calhoun would not advise |

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Communications of his duty status changes which occurred each time he allowed ███████████ into his police care which also took him out of service by his own action." |
| | | In Lt. DeJesus's findings of a violation of Duty Responsibilities (VPD General Order B-1, III, B1.14), he states: |
| | | By virtue of Officer Calhoun taking himself out of service without lawful and/or reasonable justification, he was not in a position to respond expeditiously to calls for service either directed to him by Communications, or calls from other uniformed officers who may have needed assistance or backup, or from citizens of this City. By virtue of him having an unauthorized civilian inside his police car, he was no longer in a position to respond and/or perform his duties in a prompt or safe manner. |
| | | **Evidence:** Ex 15 to Casper Decl [Notice of Discipline]; Ex 16 to Casper Decl [VPD Internal Affairs Investigation Report No. 2013-03]; Calhoun Depo at 37:20-22, 48:1-6. |
| 12. | On May 16, 2012, Officer Chase Calhoun was on duty starting at 7 a.m.<br><br>**Evidence:** Deposition of Chase Calhoun at 34:1-3, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 12. Undisputed. |
| 13. | That day, Officer Chase Calhoun's attire consisted of a full police uniform, a utility belt, handcuffs, a gun and holster, a Taser, pepper spray, a baton, magazines in a magazine pouch, and radio. | 13. Undisputed. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | **Evidence:** Deposition of Chase Calhoun at 57:8-23, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | |
| 14. | On May 16, 2012, around 12:08 p.m., Officer Chase Calhoun was dispatched to a call at 47 Kentucky Street to investigate a bank fraud.<br><br>**Evidence:** Deposition of Chase Calhoun at 36:13-14; 39:12-40:4; 48:1-3, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 14. Disputed. The CAD Log reflects that Calhoun was first contacted at 10:59 a.m. on May 16, 2012, but did not 'pick up' the call for service until 12:08 p.m. Calhoun's superior, Sergeant B. Clark, noticed that Calhoun had a habit of not picking up calls for service, which was later revealed to be due to Calhoun having sexual intercourse with a woman in remote locations while he was on duty, including during the time period encompassing May 16, 2012.<br><br>At 10:59 a.m. on May 16, 2012, VPD Investigations Clerk/Secretary Stephanie Boursaw ("Boursaw") initiated a call for service out to 47 Kentucky Street, listing Erika Gregory as the reporting party, and listing her phone number.<br><br>The CAD entry lists as the patrol unit to respond as "PD/2P6," which was an identification referring to Calhoun's patrol unit. According to Calhoun, "2" represents the shift, "P" is for "patrol", and "6" was "the beat assignment, the area that I was assigned to work."<br><br>Calhoun states that the calls for service would appear in the computer in the patrol cars.<br><br>One minute later, at 11:00 a.m., Boursaw listed that the reporting party had filed a report, including a report number, and indicated that the reporting party [Gregory] "has suspect information provided to her by the bank" and "would |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | like to speak to an officer to provide suspect information."

At 11:17 a.m., seventeen minutes after the initial call for service to "PD/2P6", dispatch recommended several other VPD patrol units to respond.

At 12:05 p.m., the call for service "timed out."

At 12:08 p.m., the call for service to 47 Kentucky Street was renewed, with "PD/2P6" and other units recommended, at which time Calhoun finally picked up the call for service.

Calhoun does not recall if he ultimately asked to be sent to the call or was directly dispatched to the call, but "either way, it was in my area, so it was something I had to deal with."

Calhoun recalls that he was in his car when he was dispatched to 47 Kentucky Street, but does not recall where in the city he was at the time.

From April 2012 through February 2013, ██████ lived at ████ Santa Clara Street.

From March 2, 2012 through January 9, 2013, Calhoun worked frequently as a solo beat officer assigned to "Beat 6," which Lt. DeJesus found of significance because Beat 6 is in close proximity to ████ house on Santa Clara Street.

Calhoun was working as a solo beat officer assigned to "Beat 6" on May 16, 2012 when he shot and killed Belle.

During the time ████ lived on Santa Clara Street, she and Calhoun had sexual |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | intercourse while he was on duty once or twice a week.<br><br>During this timeframe, the IA revealed that Calhoun took ■■■ to remote locations to have sex while on his shift, including to a recycling center on Mare Island and to MITC<br><br>Lt. DeJesus interviewed Sgt. Clark as part of the IA.<br><br>The IA states, "Sergeant Clark spoke of Officer Calhoun having 'routinely' missed 'Calls for Service,' and how dispatch would need to 'advise a second time' at which point Officer Calhoun would then answer for his designated CFS."<br><br>In Lt. DeJesus's findings of a violation of Availability of Duty (VPD General Order B-1, III, B1.4), he states:<br>"During the course of the investigation, I was able to confirm the actual locations where Officer Calhoun would drive ■■■ ■■■ for the purpose of having sexual intercourse.  These locations were established to be in remote areas concealed from the general public where Officer Calhoun could assure himself of the privacy he would need to complete these sexual encounters.  The location on Mare Island near Alco Recycling, which is located on the furthest North-West corner of the Island, the PG&E substation in Glen Clove, and Gilcrest, would necessarily take Officer Calhoun out of service for extended periods and very likely resulted in missed or delayed responses to Calls for Service as confirmed by Sergeant B. Clark.<br><br>Officer Calhoun would not advise |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | **CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE** | **PLAINTIFFS' RESPONSE** |
|---|---|---|
| | | Communications of his duty status changes which occurred each time he allowed ▮▮▮▮▮▮▮▮ into his police care which also took him out of service by his own action." |
| | | In Lt. DeJesus's findings of a violation of Duty Responsibilities (VPD General Order B-1, III, B1.14), he states: |
| | | By virtue of Officer Calhoun taking himself out of service without lawful and/or reasonable justification, he was not in a position to respond expeditiously to calls for service either directed to him by Communications, or calls from other uniformed officers who may have needed assistance or backup, or from citizens of this City.  By virtue of him having an unauthorized civilian inside his police car, he was no longer in a position to respond and/or perform his duties in a prompt or safe manner. |
| | | **Evidence:** Ex 5 to Casper Decl [CAD Log]**;** Calhoun Depo at 36:13-14, 37:12-15, 37:20-22, 40:1-12, 48:7-11; Ex 15 to Casper Decl; Ex 16 to Casper Decl. |
| 15. | On the morning of May 16, 2012, Plaintiff Erika Gregory had called VPD dispatch to request that an officer investigate an alleged check fraud.<br><br>**Evidence:** Deposition of Erika Gregory, 28:1-29:24, attached as Exhibit C to the Declaration of Furah Z. Faruqui. | 15.  Disputed.  Gregory called VPD the morning of May 16, 2012 to find out what, if anything, had been done in response to her prior report to VPD of a check fraud.<br><br>On Thursday or Friday, May 10 or 11, 2012, Gregory was traveling for work and learned that her personal bank account had been overdrawn when there should have been sufficient funds. After looking at copies of deposited checks online, Gregory discovered that someone had stolen six or seven checks from her |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | personal checkbook and fraudulently written and signed these checks in an amount totaling approximately $5,000.

Gregory contacted her bank (Umpqua Bank) to report the theft, and an assigned bank investigator instructed her to file a report with VPD to increase the chances of bank reimbursement.

On May 11, 2012, Gregory called VPD, but no one picked up the line, so she submitted an online report through VPD's website. Gregory never received a response from VPD to her online report, other than an electronic confirmation at the time of submission.

Early the following week, Gregory again spoke with the bank investigator, who told Gregory that she had also called VPD, but had not received a response.

On Wednesday, May 16, 2012, Gregory was working from home and called the bank investigator, who told her she needed to call VPD again to initiate an investigation into the theft.

At approximately 11:00 a.m., Gregory called the Investigations Unit at VPD to find out the status of her report, and a female VPD employee indicated that nothing had been done because VPD did not have enough detectives to investigate crimes other than murders.

The VPD employee transferred Gregory to dispatch, and a dispatcher determined that Gregory needed to speak with Investigations, transferring her back to the first VPD employee with whom Gregory spoke. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN                Page 13
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | The Investigations Unit employee then told Gregory that she "can try and force a message through to dispatch, but I can't guarantee you anything" and said goodbye. Id. at. Gregory did not know what "forcing a message through dispatch" meant.<br><br>**Evidence:** Deposition of Erika Gregory ("Gregory Depo") at 21:8-20, 23:2-24:7, 24:9-26:8, 26:10-30:16; Calhoun Depo at 44:3-21. |
| 16. | Officer Chase Calhoun was informed by dispatch that the homeowners wanted to "speak with an officer to provide suspect information."<br><br>**Evidence:** Deposition of Chase Calhoun at 45:1-4, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 16. Undisputed. |
| 17. | Upon arrival to the property, Officer Chase Calhoun parked his patrol car in front of the residence.<br><br>**Evidence:** Deposition of Chase Calhoun at 49:1-13, attached as Exhibit A to the Declaration of Furah Z. Faruqui; Photographs of property produced in discovery by Plaintiffs, attached as Exhibit B to the Declaration of Furah Z. Faruqui. | 17. Undisputed. |
| 18. | Upon arrival to 47 Kentucky Street, Officer Chase Calhoun walked up to the front of the property.<br><br>**Evidence:** Deposition of Chase Calhoun at 49:12-13, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 18. Undisputed. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| 19. | Officer Chase Calhoun noticed that the property was a corner lot and the entire front yard of the home was surrounded by a low white fence with an unlocked gate.<br><br>**Evidence:** Deposition of Chase Calhoun at 51:5-14, attached as Exhibit A to the Declaration of Furah Z. Faruqi; Deposition of Erika Gregory at 48:5-11, attached as Exhibit C to the Declaration of Furah Z. Faruqi. | 19. Undisputed, so long as Defendants mean the gate was 'closed' when stating it was 'unlocked.' |
| 20. | The gate of 47 Kentucky Street had neither a doorbell nor an intercom.<br><br>**Evidence:** Deposition of Chase Calhoun at 51:15-18, attached as Exhibit A to the Declaration of Furah Z. Faruqi. | 20. Disputed. There was a bell on the gate that alerted Plaintiffs to visitors.<br><br>At the time of the incident, there was a cowbell that hung from the gate that, when shaken, Gregory and others could hear from inside her home.<br><br>Calhoun did not observe a cattle bell attached to the gate.<br><br>**Evidence:** Gregory Depo at 35:1-10, 41:23-25; Declaration of Elizabeth Coudright in Support of Plaintiffs' Opposition ("Coudright Decl") ¶ 7; Calhoun Depo at 56:5-7. |
| 21. | In order to notify the residents of one's presence, one has to enter through the gate and approach the front door.<br><br>**Evidence:** Deposition of Chase Calhoun at 51:15-18, attached as Exhibit A to the Declaration of Furah Z. Faruqi. | 21. Disputed. In addition to a bell on the gate, Plaintiffs often were aware of visitors prior to their entry onto the property.<br><br>At the time of the incident, there was a cowbell that hung from the gate that, when shaken, Gregory and others could hear from inside her home.<br><br>Gregory typically heard when people walked through the gate when she was in |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | her office.<br><br>When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.<br><br>Calhoun did not observe a cattle bell attached to the gate.<br><br>**Evidence:** Gregory Depo at 35:1-10, 36:1-3, 41:23-25; Coudright Decl ¶ 7.; Deposition of Erika Gregory in Support of Plaintiffs' Opposition ("Gregory Decl") ¶ 3; Calhoun Depo at 56:5-7. |
| 22. | Plaintiffs "regularly had friends visit and enter the yard".<br><br>**Evidence:** First Amended Complaint, ¶18. | 22. Undisputed.<br><br>Note: Coudright, Plaintiffs' tenant at 47 Kentuck Street, also had friends visit and enter the yard.<br><br>Coudright had friends come to visit and they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog.<br><br>**Evidence:** Coudright Decl ¶ 4. |
| 23. | "Delivery and utility employees would periodically enter Plaintiffs' property," including an individual who made weekly deliveries of fresh vegetables onto the front porch.<br><br>**Evidence:** First Amended Complaint, ¶18. | 23. Undisputed<br><br>**Evidence:** Coudright Decl ¶ 5. |
| 24. | Before entering the gate, Officer Chase Calhoun took safety precautions to ensure | 24. Disputed. There are genuine disputes of fact regarding whether |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | that there were no dogs.<br><br>**Evidence:**  Deposition of Chase Calhoun at 54:13-17, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | Calhoun did, in fact, take these precautions.  Also there are genuine issues of fact as to whether additional precautions could have been taken in light of his concern that dogs were on the property and that he could not see onto the property due to foliage.  Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>Calhoun was aware that he was not responding to a crime in progress, and that he was following up on a prior report involving a theft from a bank account.<br><br>At the time of the incident, there was a cowbell that hung from the gate that, when shaken, Gregory and others could hear from inside her home.<br><br>On May 16, 2012, there was objective indicia of the presence of dogs on the property: there were children's and dog toys in the front patio, and there was wire fencing extending along the wooden fence line to keep the puppy, Holly, from jumping out.<br><br>Gregory typically heard when people walked through the gate when she was in her office.<br><br>When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.<br><br>Calhoun did not observe a cattle bell attached to the gate.<br><br>When Calhoun saw Plaintiffs' property, |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | his primary concern was the presence of dogs due to the fenced-in yard, and the difficulty of seeing into the property due to foliage.<br><br>Calhoun walked up to the gate and peered inside the yard, observing children's toys, such as a wading pool; he does not recall seeing dog toys, but maintains that he was concerned about the presence of dogs.<br><br>Calhoun did not call out his presence at the gate, nor did he call the reporting party to inform Gregory of his arrival because "[w]e don't generally do that . . . we respond to calls all day long, and calls like this, we go up and knock on the door; that's kind of how it works." He says "we don't walk up to somebody's house yelling and hooting and hollering and screaming and stuff, so we just walk up and knock on the door."<br><br>Calhoun states that he shook the gate and tapped the gate with his flashlight, per his habit when entering properties where dogs might be startled.<br><br>Calhoun was ultimately "confident" that there were no dogs on the premises partly because there was a small picket fence and "I didn't see wiring."<br><br>Calhoun did not take any further measures to determine whether there were dogs on the property after entering through the gate.<br><br>At the time Calhoun entered the yard, Gregory was working at her computer in her home office, waiting for the nanny to drop off five-year-old Lucy from preschool. |

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN   Page 18

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Belle and Flicka were outside, and the puppy was inside the home with Gregory.<br><br>Gregory was sitting at her desk, with her back to the window that faced the wraparound porch and front yard.<br><br>Gregory typically heard when people walked through the gate when she was in her office.<br><br>When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.<br><br>Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized.<br><br>Gregory never heard any sounds from the direction of the gate when Calhoun arrived; the first thing alerting Gregory to Calhoun's presence on her property was the sound of gunshots.<br><br>**Evidence:** Gregory Depo at 21:15-20, 35:1-10, 31:17-20, 36:1-3, 41:3-15, 41:23-25, 42:19-44:10, 49:16-20, 51:5-51:21, 54:18-23, 56:5-7, 59:3-22; Mollner Depo at 32:12-33:5; Calhoun Depo at 45:14-46:7, 52:12-53:25, 55:23-56:4, 62:24-63:5, 82:24-83:3; Ex 10 to Casper Decl [photograph of Plaintiffs' |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | front yard and house]; Ex 11 to Casper Decl [photograph of wire fencing attached to picket fence]; Gregory Decl ¶¶ 3, 4; Coudright Decl ¶ 7. |
| 25. | Officer Chase Calhoun peaked his head over the top of the gate.<br><br>**Evidence:** Deposition of Chase Calhoun at 54:13-17, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 25. Disputed. There are genuine disputes of fact regarding whether Calhoun did, in fact, take these precautions. Also there are genuine issues of fact as to whether additional precautions could have been taken in light of his concern that dogs were on the property and that he could not see onto the property due to foliage. Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>Calhoun was aware that he was not responding to a crime in progress, and that he was following up on a prior report involving a theft from a bank account.<br><br>At the time of the incident, there was a cowbell that hung from the gate that, when shaken, Gregory and others could hear from inside her home.<br><br>On May 16, 2012, there was objective indicia of the presence of dogs on the property: there were children's and dog toys in the front patio, and there was wire fencing extending along the wooden fence line to keep the puppy, Holly, from jumping out.<br><br>Gregory typically heard when people walked through the gate when she was in her office.<br><br>When Gregory was home during the day, she would typically leave the dogs in the |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking. |
| | | Calhoun did not observe a cattle bell attached to the gate. |
| | | When Calhoun saw Plaintiffs' property, his primary concern was the presence of dogs due to the fenced-in yard, and the difficulty of seeing into the property due to foliage. |
| | | Calhoun walked up to the gate and peered inside the yard, observing children's toys, such as a wading pool; he does not recall seeing dog toys, but maintains that he was concerned about the presence of dogs. |
| | | Calhoun did not call out his presence at the gate, nor did he call the reporting party to inform Gregory of his arrival because "[w]e don't generally do that . . . we respond to calls all day long, and calls like this, we go up and knock on the door; that's kind of how it works." He says "we don't walk up to somebody's house yelling and hooting and hollering and screaming and stuff, so we just walk up and knock on the door." |
| | | Calhoun states that he shook the gate and tapped the gate with his flashlight, per his habit when entering properties where dogs might be startled. |
| | | Calhoun was ultimately "confident" that there were no dogs on the premises partly because there was a small picket fence and "I didn't see wiring." |
| | | Calhoun did not take any further measures to determine whether there |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | were dogs on the property after entering through the gate.<br><br>At the time Calhoun entered the yard, Gregory was working at her computer in her home office, waiting for the nanny to drop off five-year-old Lucy from preschool.<br><br>Belle and Flicka were outside, and the puppy was inside the home with Gregory.<br><br>Gregory was sitting at her desk, with her back to the window that faced the wraparound porch and front yard.<br><br>Gregory typically heard when people walked through the gate when she was in her office.<br><br>When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.<br><br>Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized.<br><br>Gregory never heard any sounds from the direction of the gate when Calhoun arrived; the first thing alerting Gregory to Calhoun's presence on her property was the sound of gunshots. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | **Evidence:** Gregory Depo at 21:15-20, 35:1-10, 31:17-20, 36:1-3, 41:3-15, 41:23-25, 42:19-44:10, 49:16-20, 51:5-51:21, 54:18-23, 56:5-7, 59:3-22; Mollner Depo at 32:12-33:5; Calhoun Depo at 45:14-46:7, 52:12-53:25, 55:23-56:4, 62:24-63:5, 82:24-83:3; Ex 10 to Casper Decl [photograph of Plaintiffs' front yard and house]; Ex 11 to Casper Decl [photograph of wire fencing attached to picket fence]; Gregory Decl ¶¶ 3, 4; Coudright Decl ¶ 7. |
| 26. | Officer Chase Calhoun observed foliage in the front yard, but no activity from either a person or an animal.<br><br>**Evidence:** Deposition of Chase Calhoun at 54:13-17, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 26. Disputed. There are genuine disputes of fact regarding whether Calhoun did, in fact, take these precautions. Also there are genuine issues of fact as to whether additional precautions could have been taken in light of his concern that dogs were on the property and that he could not see onto the property due to foliage. Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>Calhoun was aware that he was not responding to a crime in progress, and that he was following up on a prior report involving a theft from a bank account.<br><br>At the time of the incident, there was a cowbell that hung from the gate that, when shaken, Gregory and others could hear from inside her home.<br><br>On May 16, 2012, there was objective indicia of the presence of dogs on the property: there were children's and dog toys in the front patio, and there was wire fencing extending along the wooden fence line to keep the puppy, Holly, from |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | jumping out. |
| | | Gregory typically heard when people walked through the gate when she was in her office. |
| | | When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking. |
| | | Calhoun did not observe a cattle bell attached to the gate. |
| | | When Calhoun saw Plaintiffs' property, his primary concern was the presence of dogs due to the fenced-in yard, and the difficulty of seeing into the property due to foliage. |
| | | Calhoun walked up to the gate and peered inside the yard, observing children's toys, such as a wading pool; he does not recall seeing dog toys, but maintains that he was concerned about the presence of dogs. |
| | | Calhoun did not call out his presence at the gate, nor did he call the reporting party to inform Gregory of his arrival because "[w]e don't generally do that . . . we respond to calls all day long, and calls like this, we go up and knock on the door; that's kind of how it works." He says "we don't walk up to somebody's house yelling and hooting and hollering and screaming and stuff, so we just walk up and knock on the door." |
| | | Calhoun states that he shook the gate and tapped the gate with his flashlight, per his habit when entering properties where dogs might be startled. |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Calhoun was ultimately "confident" that there were no dogs on the premises partly because there was a small picket fence and "I didn't see wiring." |
| | | Calhoun did not take any further measures to determine whether there were dogs on the property after entering through the gate. |
| | | At the time Calhoun entered the yard, Gregory was working at her computer in her home office, waiting for the nanny to drop off five-year-old Lucy from preschool. |
| | | Belle and Flicka were outside, and the puppy was inside the home with Gregory. |
| | | Gregory was sitting at her desk, with her back to the window that faced the wraparound porch and front yard. |
| | | Gregory typically heard when people walked through the gate when she was in her office. |
| | | When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking. |
| | | Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN   Page 25
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | socialized. |
| | | Gregory never heard any sounds from the direction of the gate when Calhoun arrived; the first thing alerting Gregory to Calhoun's presence on her property was the sound of gunshots. |
| | | **Evidence:** Gregory Depo at 21:15-20, 35:1-10, 31:17-20, 36:1-3, 41:3-15, 41:23-25, 42:19-44:10, 49:16-20, 51:5-51:21, 54:18-23, 56:5-7, 59:3-22; Mollner Depo at 32:12-33:5; Calhoun Depo at 45:14-46:7, 52:12-53:25, 55:23-56:4, 62:24-63:5, 82:24-83:3; Ex 10 to Casper Decl [photograph of Plaintiffs' front yard and house]; Ex 11 to Casper Decl [photograph of wire fencing attached to picket fence]; Gregory Decl ¶¶ 3, 4; Coudright Decl ¶ 7. |
| 27. | Officer Chase Calhoun shook the gate and "hit the gate" with a flashlight to ensure that he did not startle any dogs as he entered the property.<br><br>**Evidence:** Deposition of Chase Calhoun at 54:18-22, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 27. Disputed. There are genuine disputes of fact regarding whether Calhoun did, in fact, take these precautions. Also there are genuine issues of fact as to whether additional precautions could have been taken in light of his concern that dogs were on the property and that he could not see onto the property due to foliage. Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>Calhoun was aware that he was not responding to a crime in progress, and that he was following up on a prior report involving a theft from a bank account.<br><br>At the time of the incident, there was a cowbell that hung from the gate that, when shaken, Gregory and others could |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | hear from inside her home.<br><br>On May 16, 2012, there was objective indicia of the presence of dogs on the property: there were children's and dog toys in the front patio, and there was wire fencing extending along the wooden fence line to keep the puppy, Holly, from jumping out.<br><br>Gregory typically heard when people walked through the gate when she was in her office.<br><br>When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.<br><br>Calhoun did not observe a cattle bell attached to the gate.<br><br>When Calhoun saw Plaintiffs' property, his primary concern was the presence of dogs due to the fenced-in yard, and the difficulty of seeing into the property due to foliage.<br><br>Calhoun walked up to the gate and peered inside the yard, observing children's toys, such as a wading pool; he does not recall seeing dog toys, but maintains that he was concerned about the presence of dogs.<br><br>Calhoun did not call out his presence at the gate, nor did he call the reporting party to inform Gregory of his arrival because "[w]e don't generally do that . . . we respond to calls all day long, and calls like this, we go up and knock on the door; that's kind of how it works." He says "we don't walk up to somebody's |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | house yelling and hooting and hollering and screaming and stuff, so we just walk up and knock on the door." |
| | | Calhoun states that he shook the gate and tapped the gate with his flashlight, per his habit when entering properties where dogs might be startled. |
| | | Calhoun was ultimately "confident" that there were no dogs on the premises partly because there was a small picket fence and "I didn't see wiring." |
| | | Calhoun did not take any further measures to determine whether there were dogs on the property after entering through the gate. |
| | | At the time Calhoun entered the yard, Gregory was working at her computer in her home office, waiting for the nanny to drop off five-year-old Lucy from preschool. |
| | | Belle and Flicka were outside, and the puppy was inside the home with Gregory. |
| | | Gregory was sitting at her desk, with her back to the window that faced the wraparound porch and front yard. |
| | | Gregory typically heard when people walked through the gate when she was in her office. |
| | | When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking. |
| | | Coudright states that Belle and Flicka |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized.<br><br>Gregory never heard any sounds from the direction of the gate when Calhoun arrived; the first thing alerting Gregory to Calhoun's presence on her property was the sound of gunshots.<br><br>**Evidence:** Gregory Depo at 21:15-20, 35:1-10, 31:17-20, 36:1-3, 41:3-15, 41:23-25, 42:19-44:10, 49:16-20, 51:5-51:21, 54:18-23, 56:5-7, 59:3-22; Mollner Depo at 32:12-33:5; Calhoun Depo at 45:14-46:7, 52:12-53:25, 55:23-56:4, 62:24-63:5, 82:24-83:3; Ex 10 to Casper Decl [photograph of Plaintiffs' front yard and house]; Ex 11 to Casper Decl [photograph of wire fencing attached to picket fence]; Gregory Decl ¶¶ 3, 4; Coudright Decl ¶ 7. |
| 28. | Officer Chase Calhoun heard no response after taking the above safety precautions.<br><br>**Evidence:** Deposition of Chase Calhoun at 64:5-7, attached as Exhibit A to the Declaration of Furah Z. Faruqi. | 28. Disputed. There are genuine disputes of fact regarding whether Calhoun did, in fact, take these precautions. Also there are genuine issues of fact as to whether additional precautions could have been taken in light of his concern that dogs were on the property and that he could not see onto the property due to foliage. Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above). |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Calhoun was aware that he was not responding to a crime in progress, and that he was following up on a prior report involving a theft from a bank account.

At the time of the incident, there was a cowbell that hung from the gate that, when shaken, Gregory and others could hear from inside her home.

On May 16, 2012, there was objective indicia of the presence of dogs on the property: there were children's and dog toys in the front patio, and there was wire fencing extending along the wooden fence line to keep the puppy, Holly, from jumping out.

Gregory typically heard when people walked through the gate when she was in her office.

When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.

Calhoun did not observe a cattle bell attached to the gate.

When Calhoun saw Plaintiffs' property, his primary concern was the presence of dogs due to the fenced-in yard, and the difficulty of seeing into the property due to foliage.

Calhoun walked up to the gate and peered inside the yard, observing children's toys, such as a wading pool; he does not recall seeing dog toys, but maintains that he was concerned about the presence of dogs. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Calhoun did not call out his presence at the gate, nor did he call the reporting party to inform Gregory of his arrival because "[w]e don't generally do that . . . we respond to calls all day long, and calls like this, we go up and knock on the door; that's kind of how it works." He says "we don't walk up to somebody's house yelling and hooting and hollering and screaming and stuff, so we just walk up and knock on the door." |
| | | Calhoun states that he shook the gate and tapped the gate with his flashlight, per his habit when entering properties where dogs might be startled. |
| | | Calhoun was ultimately "confident" that there were no dogs on the premises partly because there was a small picket fence and "I didn't see wiring." |
| | | Calhoun did not take any further measures to determine whether there were dogs on the property after entering through the gate. |
| | | At the time Calhoun entered the yard, Gregory was working at her computer in her home office, waiting for the nanny to drop off five-year-old Lucy from preschool. |
| | | Belle and Flicka were outside, and the puppy was inside the home with Gregory. |
| | | Gregory was sitting at her desk, with her back to the window that faced the wraparound porch and front yard. |
| | | Gregory typically heard when people walked through the gate when she was in her office. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.<br><br>Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized.<br><br>Gregory never heard any sounds from the direction of the gate when Calhoun arrived; the first thing alerting Gregory to Calhoun's presence on her property was the sound of gunshots.<br><br>**Evidence:** Gregory Depo at 21:15-20, 35:1-10, 31:17-20, 36:1-3, 41:3-15, 41:23-25, 42:19-44:10, 49:16-20, 51:5-51:21, 54:18-23, 56:5-7, 59:3-22; Mollner Depo at 32:12-33:5; Calhoun Depo at 45:14-46:7, 52:12-53:25, 55:23-56:4, 62:24-63:5, 82:24-83:3; Ex 10 to Casper Decl [photograph of Plaintiffs' front yard and house]; Ex 11 to Casper Decl [photograph of wire fencing attached to picket fence]; Gregory Decl ¶¶ 3, 4; Coudright Decl ¶ 7. |
| 29. | Thereafter, Officer Chase Calhoun entered the yard and started walking towards the front door.<br><br>**Evidence:**  Deposition of Chase Calhoun at 66:12-15, attached as Exhibit A to the | 29.  Disputed to the extent "thereafter" is in reference to safety precautions that Calhoun allegedly made prior to entering the property. (See Plaintiffs' Response Nos. 24-28 and accompanying evidence, above). |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | Declaration of Furah Z. Faruqui. | |
| 30. | As Officer Chase Calhoun was halfway to the front door, he suddenly "heard a sound" and observed "two dogs charging around the left corner of the house at a full sprint."<br><br>**Evidence:** Deposition of Chase Calhoun at 66:16-19, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 30.  Disputed to the extent that the statement implies that the dogs were charging in an aggressive manner.  Also disputed to the extent that a "full sprint" refers to an eleven-year-old dog and a fourteen-year-old blind and deaf dog. There are genuine issues of material fact as to the aggressiveness of Belle.  Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>At the time of the incident, Plaintiffs owned three dogs: fourteen-year-old Flicka, eleven-year-old Belle, and Holly, a puppy.<br><br>Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten Belle when she was approximately nine weeks old.<br><br>Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds.<br><br>During the more than ten years that Plaintiffs owned Belle, she had never bitten a person or been involved in any altercations with other dogs. Belle and Flicka also got along with each other.<br><br>Elizabeth Coudright ("Coudright") was Plaintiffs' tenant at 47 Kentucky Street, living in the unit below their home from July 15, 2009 until July 15, 2012.<br><br>When Coudright first viewed the unit in |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN          Page 33
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 2009 after telling Mollner that she was comfortable with dogs, she saw two dogs, Belle and Flicka, come bounding to the gate, barking and wagging their tails. She entered the property by herself and did not feel threatened by their presence.<br><br>Coudright's apartment was directly below Plaintiffs' home and they shared common space behind their completely fenced property for three years. She interacted with Belle every day, and when the family would go out of town, Coudright would dog sit for the family.<br><br>Coudright had friends come to visit and they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog.<br><br>Plaintiffs and Coudright had a bi-monthly delivery of fresh vegetables to the house that would be left on the porch, and there was never a complaint or request to lock up the dogs.<br><br>Coudright also observed Belle as being very good with the family's children, as Belle had been with Plaintiffs prior to the arrival of children. Belle tolerated the kids as they rolled over her and tugged at her ears, and even when they would accidently hurt her while roughhousing.<br><br>Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | socialized. |
| | | Coudright had never seen either Belle or Flicka attack, bite, or show any aggression to any of the many visitors to the property in the three years that she lived at 47 Kentucky Street.  Id. at 8. |
| | | Jan Gregory ("J. Gregory") is Erika's mother, has owned dogs for over fifty years, and knew Belle since she was a puppy. |
| | | Over eleven years, J. Gregory saw Belle in a variety of contexts: in Belle's own home – both at large gatherings when she didn't know all the guests and when J. Gregory was the sole visitor – and in J. Gregory's home. In all of these circumstances, J. Gregory saw Belle as relaxed and at ease with both people and other dogs, composed and amiable. |
| | | When J. Gregory visited her daughter's home, Belle always came to the gate and greeted J. Gregory enthusiastically, approaching in a friendly fashion. On a couple of occasions when J. Gregory was present, Belle barked briefly at a UPS driver, as many dogs would, but subsided quickly. The delivery driver came through the gate easily and confidently to deliver parcels, showing no sign of feeling threatened. |
| | | J. Gregory and Plaintiffs' family walked their dogs at the Point Isabel off-lead dog play area. Belle behaved just as one would want a dog to do: she ran, swam, greeted other dogs, and showed no fear or aggression toward people or dogs at the site. J. Gregory found Belle to be a sweet, well-mannered and even-tempered dog. |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | **Evidence:** Gregory Depo at 58:15-59:2, 59:23-24, 60:5-17; Ex 3 to Casper Decl [Photo of Belle and Flicka]; Coudright Decl ¶¶ 1-8; Declaration of Jan Gregory ("J. Gregory Decl") ¶¶ 1-7. |
| 31. | Officer Chase Calhoun's attention was directed to the lead dog, Belle, a mixed-breed dog that weighed approximately 70 pounds. It was "barking and snarling", showing its teeth, had "raised hair", and exhibited a "straight tail."<br><br>**Evidence:** Deposition of Chase Calhoun at 70:7-11, attached as Exhibit A to the Declaration of Furah Z. Faruqui; First Amended Complaint, ¶18. | 31. Disputed.  There are genuine issues of material fact as to the aggressiveness of Belle.  Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>At the time of the incident, Plaintiffs owned three dogs: fourteen-year-old Flicka, eleven-year-old Belle, and Holly, a puppy.<br><br>Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten Belle when she was approximately nine weeks old.<br><br>Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds.<br><br>During the more than ten years that Plaintiffs owned Belle, she had never bitten a person or been involved in any altercations with other dogs. Belle and Flicka also got along with each other.<br><br>Elizabeth Coudright ("Coudright") was Plaintiffs' tenant at 47 Kentucky Street, living in the unit below their home from July 15, 2009 until July 15, 2012.<br><br>When Coudright first viewed the unit in 2009 after telling Mollner that she was |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | comfortable with dogs, she saw two dogs, Belle and Flicka, come bounding to the gate, barking and wagging their tails. She entered the property by herself and did not feel threatened by their presence.<br><br>Coudright's apartment was directly below Plaintiffs' home and they shared common space behind their completely fenced property for three years. She interacted with Belle every day, and when the family would go out of town, Coudright would dog sit for the family.<br><br>Coudright had friends come to visit and they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog.<br><br>Plaintiffs and Coudright had a bi-monthly delivery of fresh vegetables to the house that would be left on the porch, and there was never a complaint or request to lock up the dogs.<br><br>Coudright also observed Belle as being very good with the family's children, as Belle had been with Plaintiffs prior to the arrival of children. Belle tolerated the kids as they rolled over her and tugged at her ears, and even when they would accidently hurt her while roughhousing.<br><br>Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|
| | Coudright had never seen either Belle or Flicka attack, bite, or show any aggression to any of the many visitors to the property in the three years that she lived at 47 Kentucky Street.  Id. at 8.<br><br>Jan Gregory ("J. Gregory") is Erika's mother, has owned dogs for over fifty years, and knew Belle since she was a puppy.<br><br>Over eleven years, J. Gregory saw Belle in a variety of contexts: in Belle's own home – both at large gatherings when she didn't know all the guests and when J. Gregory was the sole visitor – and in J. Gregory's home. In all of these circumstances, J. Gregory saw Belle as relaxed and at ease with both people and other dogs, composed and amiable.<br><br>When J. Gregory visited her daughter's home, Belle always came to the gate and greeted J. Gregory enthusiastically, approaching in a friendly fashion. On a couple of occasions when J. Gregory was present, Belle barked briefly at a UPS driver, as many dogs would, but subsided quickly. The delivery driver came through the gate easily and confidently to deliver parcels, showing no sign of feeling threatened.<br><br>J. Gregory and Plaintiffs' family walked their dogs at the Point Isabel off-lead dog play area. Belle behaved just as one would want a dog to do: she ran, swam, greeted other dogs, and showed no fear or aggression toward people or dogs at the site. J. Gregory found Belle to be a sweet, well-mannered and even-tempered dog. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | **Evidence:** Gregory Depo at 58:15-59:2, 59:23-24, 60:5-17; Ex 3 to Casper Decl [Photo of Belle and Flicka]; Coudright Decl ¶¶ 1-8; Declaration of Jan Gregory ("J. Gregory Decl") ¶¶ 1-7. |
| 32. | Based on his experience, Officer Chase Calhoun recognized that the "dogs did not appear to be friendly", and it "appeared that they were running in full sprint because they were going to attack [him]." <br><br> **Evidence:** Deposition of Chase Calhoun at 70:9-14, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 32. Disputed. There are genuine issues of material fact as to the aggressiveness of Belle. Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above). <br><br> At the time of the incident, Plaintiffs owned three dogs: fourteen-year-old Flicka, eleven-year-old Belle, and Holly, a puppy. <br><br> Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten Belle when she was approximately nine weeks old. <br><br> Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds. <br><br> During the more than ten years that Plaintiffs owned Belle, she had never bitten a person or been involved in any altercations with other dogs. Belle and Flicka also got along with each other. <br><br> Elizabeth Coudright ("Coudright") was Plaintiffs' tenant at 47 Kentucky Street, living in the unit below their home from July 15, 2009 until July 15, 2012. <br><br> When Coudright first viewed the unit in 2009 after telling Mollner that she was comfortable with dogs, she saw two |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | dogs, Belle and Flicka, come bounding to the gate, barking and wagging their tails. She entered the property by herself and did not feel threatened by their presence.<br><br>Coudright's apartment was directly below Plaintiffs' home and they shared common space behind their completely fenced property for three years. She interacted with Belle every day, and when the family would go out of town, Coudright would dog sit for the family.<br><br>Coudright had friends come to visit and they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog.<br><br>Plaintiffs and Coudright had a bi-monthly delivery of fresh vegetables to the house that would be left on the porch, and there was never a complaint or request to lock up the dogs.<br><br>Coudright also observed Belle as being very good with the family's children, as Belle had been with Plaintiffs prior to the arrival of children. Belle tolerated the kids as they rolled over her and tugged at her ears, and even when they would accidently hurt her while roughhousing.<br><br>Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized. |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Coudright had never seen either Belle or Flicka attack, bite, or show any aggression to any of the many visitors to the property in the three years that she lived at 47 Kentucky Street.  Id. at 8. |
| | | Jan Gregory ("J. Gregory") is Erika's mother, has owned dogs for over fifty years, and knew Belle since she was a puppy. |
| | | Over eleven years, J. Gregory saw Belle in a variety of contexts: in Belle's own home – both at large gatherings when she didn't know all the guests and when J. Gregory was the sole visitor – and in J. Gregory's home. In all of these circumstances, J. Gregory saw Belle as relaxed and at ease with both people and other dogs, composed and amiable. |
| | | When J. Gregory visited her daughter's home, Belle always came to the gate and greeted J. Gregory enthusiastically, approaching in a friendly fashion. On a couple of occasions when J. Gregory was present, Belle barked briefly at a UPS driver, as many dogs would, but subsided quickly. The delivery driver came through the gate easily and confidently to deliver parcels, showing no sign of feeling threatened. |
| | | J. Gregory and Plaintiffs' family walked their dogs at the Point Isabel off-lead dog play area. Belle behaved just as one would want a dog to do: she ran, swam, greeted other dogs, and showed no fear or aggression toward people or dogs at the site. J. Gregory found Belle to be a sweet, well-mannered and even-tempered dog. |
| | | **Evidence:** Gregory Depo at 58:15-59:2, |

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN     Page 41

PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | 59:23-24, 60:5-17; Ex 3 to Casper Decl [Photo of Belle and Flicka]; Coudright Decl ¶¶ 1-8; Declaration of Jan Gregory ("J. Gregory Decl") ¶¶ 1-7. |
| 33. | Within that second, Officer Chase Calhoun realized that he was "going to be attacked by two dogs."<br><br>**Evidence:** Deposition of Chase Calhoun at 71:15-16, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 34. Disputed. There are genuine issues of material fact as to the aggressiveness of Belle. Also disputed that the "two dogs" that were allegedly going to attack were an eleven-year-old dog and a fourteen-year-old blind and deaf dog. Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>At the time of the incident, Plaintiffs owned three dogs: fourteen-year-old Flicka, eleven-year-old Belle, and Holly, a puppy.<br><br>Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten Belle when she was approximately nine weeks old.<br><br>Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds.<br><br>During the more than ten years that Plaintiffs owned Belle, she had never bitten a person or been involved in any altercations with other dogs. Belle and Flicka also got along with each other.<br><br>Elizabeth Coudright ("Coudright") was Plaintiffs' tenant at 47 Kentucky Street, living in the unit below their home from July 15, 2009 until July 15, 2012. |

CASPER, MEADOWS,<br>SCHWARTZ & COOK<br>2121 N. California Blvd.,<br>Suite 1020<br>Walnut Creek, CA 94596<br>TEL: (925) 947-1147<br>FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | When Coudright first viewed the unit in 2009 after telling Mollner that she was comfortable with dogs, she saw two dogs, Belle and Flicka, come bounding to the gate, barking and wagging their tails. She entered the property by herself and did not feel threatened by their presence. |
| | | Coudright's apartment was directly below Plaintiffs' home and they shared common space behind their completely fenced property for three years. She interacted with Belle every day, and when the family would go out of town, Coudright would dog sit for the family. |
| | | Coudright had friends come to visit and they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog. |
| | | Plaintiffs and Coudright had a bi-monthly delivery of fresh vegetables to the house that would be left on the porch, and there was never a complaint or request to lock up the dogs. |
| | | Coudright also observed Belle as being very good with the family's children, as Belle had been with Plaintiffs prior to the arrival of children. Belle tolerated the kids as they rolled over her and tugged at her ears, and even when they would accidently hurt her while roughhousing. |
| | | Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | commands, and were well behaved and socialized.

Coudright had never seen either Belle or Flicka attack, bite, or show any aggression to any of the many visitors to the property in the three years that she lived at 47 Kentucky Street.  Id. at 8.

Jan Gregory ("J. Gregory") is Erika's mother, has owned dogs for over fifty years, and knew Belle since she was a puppy.

Over eleven years, J. Gregory saw Belle in a variety of contexts: in Belle's own home – both at large gatherings when she didn't know all the guests and when J. Gregory was the sole visitor – and in J. Gregory's home. In all of these circumstances, J. Gregory saw Belle as relaxed and at ease with both people and other dogs, composed and amiable.

When J. Gregory visited her daughter's home, Belle always came to the gate and greeted J. Gregory enthusiastically, approaching in a friendly fashion. On a couple of occasions when J. Gregory was present, Belle barked briefly at a UPS driver, as many dogs would, but subsided quickly. The delivery driver came through the gate easily and confidently to deliver parcels, showing no sign of feeling threatened.

J. Gregory and Plaintiffs' family walked their dogs at the Point Isabel off-lead dog play area. Belle behaved just as one would want a dog to do: she ran, swam, greeted other dogs, and showed no fear or aggression toward people or dogs at the site. J. Gregory found Belle to be a sweet, well-mannered and even-tempered |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

Gregory, et al. vs. City of Vallejo, et al.     Case No. 2:13-CV-00320-KJM-KJN                    Page 44
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | dog.<br><br>**Evidence:** Gregory Depo at 58:15-59:2, 59:23-24, 60:5-17; Ex 3 to Casper Decl [Photo of Belle and Flicka]; Coudright Decl ¶¶ 1-8; Declaration of Jan Gregory ("J. Gregory Decl") ¶¶ 1-7. |
| 34. | Officer Chase Calhoun backed away five or six feet so that he could get out of the yard, but the dogs continued to charge at him.<br><br>**Evidence:** Deposition of Chase Calhoun at 71:22-72:3, attached as Exhibit A to the Declaration of Furah Z. Faruqi. | 34.  Disputed.  There are genuine issues of material fact as to the aggressiveness of Belle, and whether the dogs were running up to greet Calhoun.  Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>At the time of the incident, Plaintiffs owned three dogs: fourteen-year-old Flicka, eleven-year-old Belle, and Holly, a puppy.<br><br>Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten Belle when she was approximately nine weeks old.<br><br>Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds.<br><br>During the more than ten years that Plaintiffs owned Belle, she had never bitten a person or been involved in any altercations with other dogs. Belle and Flicka also got along with each other.<br><br>Elizabeth Coudright ("Coudright") was Plaintiffs' tenant at 47 Kentucky Street, living in the unit below their home from July 15, 2009 until July 15, 2012. |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | When Coudright first viewed the unit in 2009 after telling Mollner that she was comfortable with dogs, she saw two dogs, Belle and Flicka, come bounding to the gate, barking and wagging their tails. She entered the property by herself and did not feel threatened by their presence. |
| | | Coudright's apartment was directly below Plaintiffs' home and they shared common space behind their completely fenced property for three years. She interacted with Belle every day, and when the family would go out of town, Coudright would dog sit for the family. |
| | | Coudright had friends come to visit and they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog. |
| | | Plaintiffs and Coudright had a bi-monthly delivery of fresh vegetables to the house that would be left on the porch, and there was never a complaint or request to lock up the dogs. |
| | | Coudright also observed Belle as being very good with the family's children, as Belle had been with Plaintiffs prior to the arrival of children. Belle tolerated the kids as they rolled over her and tugged at her ears, and even when they would accidently hurt her while roughhousing. |
| | | Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN                    Page 46
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | the property. Belle and Flicka listened to commands, and were well behaved and socialized.<br><br>Coudright had never seen either Belle or Flicka attack, bite, or show any aggression to any of the many visitors to the property in the three years that she lived at 47 Kentucky Street.  Id. at 8.<br><br>Jan Gregory ("J. Gregory") is Erika's mother, has owned dogs for over fifty years, and knew Belle since she was a puppy.<br><br>Over eleven years, J. Gregory saw Belle in a variety of contexts: in Belle's own home – both at large gatherings when she didn't know all the guests and when J. Gregory was the sole visitor – and in J. Gregory's home. In all of these circumstances, J. Gregory saw Belle as relaxed and at ease with both people and other dogs, composed and amiable.<br><br>When J. Gregory visited her daughter's home, Belle always came to the gate and greeted J. Gregory enthusiastically, approaching in a friendly fashion. On a couple of occasions when J. Gregory was present, Belle barked briefly at a UPS driver, as many dogs would, but subsided quickly. The delivery driver came through the gate easily and confidently to deliver parcels, showing no sign of feeling threatened.<br><br>J. Gregory and Plaintiffs' family walked their dogs at the Point Isabel off-lead dog play area. Belle behaved just as one would want a dog to do: she ran, swam, greeted other dogs, and showed no fear or aggression toward people or dogs at the site. J. Gregory found Belle to be a |

CASPER, MEADOWS,<br>SCHWARTZ & COOK<br>2121 N. California Blvd.,<br>Suite 1020<br>Walnut Creek, CA  94596<br>TEL: (925) 947-1147<br>FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | sweet, well-mannered and even-tempered dog.<br><br>**Evidence:** Gregory Depo at 58:15-59:2, 59:23-24, 60:5-17; Ex 3 to Casper Decl [Photo of Belle and Flicka]; Coudright Decl ¶¶ 1-8; Declaration of Jan Gregory ("J. Gregory Decl") ¶¶ 1-7. |
| 35. | Officer Chase Calhoun drew his firearm and fired two rounds just in time to prevent the first dog from attacking him.<br><br>**Evidence:** Deposition of Chase Calhoun at 71:17-18, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 36. Disputed. There are significant disputes of fact regarding Belle's aggressiveness and whether she was, in fact, going to attack. Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>At the time of the incident, Plaintiffs owned three dogs: fourteen-year-old Flicka, eleven-year-old Belle, and Holly, a puppy.<br><br>Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten Belle when she was approximately nine weeks old.<br><br>Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds.<br><br>During the more than ten years that Plaintiffs owned Belle, she had never bitten a person or been involved in any altercations with other dogs. Belle and Flicka also got along with each other.<br><br>Elizabeth Coudright ("Coudright") was Plaintiffs' tenant at 47 Kentucky Street, living in the unit below their home from |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | July 15, 2009 until July 15, 2012. |

July 15, 2009 until July 15, 2012.

When Coudright first viewed the unit in 2009 after telling Mollner that she was comfortable with dogs, she saw two dogs, Belle and Flicka, come bounding to the gate, barking and wagging their tails. She entered the property by herself and did not feel threatened by their presence.

Coudright's apartment was directly below Plaintiffs' home and they shared common space behind their completely fenced property for three years. She interacted with Belle every day, and when the family would go out of town, Coudright would dog sit for the family.

Coudright had friends come to visit and they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog.

Plaintiffs and Coudright had a bi-monthly delivery of fresh vegetables to the house that would be left on the porch, and there was never a complaint or request to lock up the dogs.

Coudright also observed Belle as being very good with the family's children, as Belle had been with Plaintiffs prior to the arrival of children. Belle tolerated the kids as they rolled over her and tugged at her ears, and even when they would accidently hurt her while roughhousing.

Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized.<br><br>Coudright had never seen either Belle or Flicka attack, bite, or show any aggression to any of the many visitors to the property in the three years that she lived at 47 Kentucky Street.  Id. at 8.<br><br>Jan Gregory ("J. Gregory") is Erika's mother, has owned dogs for over fifty years, and knew Belle since she was a puppy.<br><br>Over eleven years, J. Gregory saw Belle in a variety of contexts: in Belle's own home – both at large gatherings when she didn't know all the guests and when J. Gregory was the sole visitor – and in J. Gregory's home. In all of these circumstances, J. Gregory saw Belle as relaxed and at ease with both people and other dogs, composed and amiable.<br><br>When J. Gregory visited her daughter's home, Belle always came to the gate and greeted J. Gregory enthusiastically, approaching in a friendly fashion. On a couple of occasions when J. Gregory was present, Belle barked briefly at a UPS driver, as many dogs would, but subsided quickly. The delivery driver came through the gate easily and confidently to deliver parcels, showing no sign of feeling threatened.<br><br>J. Gregory and Plaintiffs' family walked their dogs at the Point Isabel off-lead dog play area. Belle behaved just as one would want a dog to do: she ran, swam, greeted other dogs, and showed no fear or aggression toward people or dogs at |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | the site. J. Gregory found Belle to be a sweet, well-mannered and even-tempered dog.<br><br>Calhoun was not bitten by either dog.<br><br>Calhoun was the only eye witness to the shooting.<br><br>**Evidence:** Gregory Depo at 55:20-56:5, 58:15-59:2, 59:23-24, 60:5-17; Calhoun Depo at 75:10-12; Ex 3 to Casper Decl [Photo of Belle and Flicka]; Coudright Decl ¶¶ 1-8; Declaration of Jan Gregory ("J. Gregory Decl") ¶¶ 1-7. |
| 36. | At that time, Officer Chase Calhoun scanned over to the second dog and noticed it had retreated after the gun fire.<br><br>**Evidence:** Deposition of Chase Calhoun at 71:19-20, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 36. Disputed to the extent that "retreated" implies that Flicka, a fourteen-year-old dog, was going to attack in the first place.<br><br>Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds.<br><br>**Evidence:** Gregory Decl ¶ 2; Ex 3 to Casper Decl. |
| 37. | Subsequently, Officer Chase Calhoun backed out of the yard and closed the gate.<br><br>**Evidence:** Deposition of Chase Calhoun at 71:20-21, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | 37. Undisputed. |
| 38. | Officer Chase Calhoun "barely had enough time to get shots out" to prevent an attack on him. | 38. Disputed. There are significant disputes of fact regarding Belle's aggressiveness and whether she was, in |

CASPER, MEADOWS, SCHWARTZ & COOK<br>2121 N. California Blvd.,<br>Suite 1020<br>Walnut Creek, CA 94596<br>TEL: (925) 947-1147<br>FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN      Page 51
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | **Evidence:** Deposition of Chase Calhoun at 73:4-14, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | fact, going to attack. Also disputed to the extent this assertion rests on Calhoun's credibility (See Response to No. 11 and accompanying evidence, above).<br><br>At the time of the incident, Plaintiffs owned three dogs: fourteen-year-old Flicka, eleven-year-old Belle, and Holly, a puppy.<br><br>Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten Belle when she was approximately nine weeks old.<br><br>Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds.<br><br>During the more than ten years that Plaintiffs owned Belle, she had never bitten a person or been involved in any altercations with other dogs. Belle and Flicka also got along with each other.<br><br>Elizabeth Coudright ("Coudright") was Plaintiffs' tenant at 47 Kentucky Street, living in the unit below their home from July 15, 2009 until July 15, 2012.<br><br>When Coudright first viewed the unit in 2009 after telling Mollner that she was comfortable with dogs, she saw two dogs, Belle and Flicka, come bounding to the gate, barking and wagging their tails. She entered the property by herself and did not feel threatened by their presence.<br><br>Coudright's apartment was directly below Plaintiffs' home and they shared common space behind their completely |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN   Page 52
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | fenced property for three years. She interacted with Belle every day, and when the family would go out of town, Coudright would dog sit for the family.<br><br>Coudright had friends come to visit and they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog.<br><br>Plaintiffs and Coudright had a bi-monthly delivery of fresh vegetables to the house that would be left on the porch, and there was never a complaint or request to lock up the dogs.<br><br>Coudright also observed Belle as being very good with the family's children, as Belle had been with Plaintiffs prior to the arrival of children. Belle tolerated the kids as they rolled over her and tugged at her ears, and even when they would accidently hurt her while roughhousing.<br><br>Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized.<br><br>Coudright had never seen either Belle or Flicka attack, bite, or show any aggression to any of the many visitors to the property in the three years that she lived at 47 Kentucky Street.  Id. at 8.<br><br>Jan Gregory ("J. Gregory") is Erika's mother, has owned dogs for over fifty |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | years, and knew Belle since she was a puppy.<br><br>Over eleven years, J. Gregory saw Belle in a variety of contexts: in Belle's own home – both at large gatherings when she didn't know all the guests and when J. Gregory was the sole visitor – and in J. Gregory's home. In all of these circumstances, J. Gregory saw Belle as relaxed and at ease with both people and other dogs, composed and amiable.<br><br>When J. Gregory visited her daughter's home, Belle always came to the gate and greeted J. Gregory enthusiastically, approaching in a friendly fashion. On a couple of occasions when J. Gregory was present, Belle barked briefly at a UPS driver, as many dogs would, but subsided quickly. The delivery driver came through the gate easily and confidently to deliver parcels, showing no sign of feeling threatened.<br><br>J. Gregory and Plaintiffs' family walked their dogs at the Point Isabel off-lead dog play area. Belle behaved just as one would want a dog to do: she ran, swam, greeted other dogs, and showed no fear or aggression toward people or dogs at the site. J. Gregory found Belle to be a sweet, well-mannered and even-tempered dog.<br><br>Calhoun was not bitten by either dog.<br><br>Calhoun was the only eye witness to the shooting. |
| 39. | Officer Chase Calhoun immediately radioed dispatch to report the incident and requested that Animal Control respond to | 39.  Undisputed. |

CASPER, MEADOWS, SCHWARTZ & COOK<br>2121 N. California Blvd.,<br>Suite 1020<br>Walnut Creek, CA  94596<br>TEL: (925) 947-1147<br>FAX (925) 947-1131

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | the scene.<br><br>**Evidence:** Deposition of Chase Calhoun at 80:9-11, attached as Exhibit A to the Declaration of Furah Z. Faruqui. | |
| 40. | After hearing the gun fire, Ms. Gregory rushed out of her home.<br><br>**Evidence:** Deposition of Erika Gregory at 57:1-4, attached as Exhibit C to the Declaration of Furah Z. Faruqui. | 40. Undisputed. |
| 41. | Officer Chase Calhoun apologized for fatally wounding Belle.<br><br>**Evidence:** Deposition of Erika Gregory at 57:5-20, attached as Exhibit C to the Declaration of Furah Z. Faruqui. | 41. Undisputed, but immaterial. |
| 42. | Officer Chase Calhoun is the only eyewitness to the event.<br><br>**Evidence:** Deposition of Erika Gregory at 55:20-56:5, attached as Exhibit C to the Declaration of Furah Z. Faruqui; Deposition of Loren Mollner at 15:18-24, attached as Exhibit D to the Declaration of Furah Z. Faruqui. | 42. Undisputed. |
| 43. | Although Ms. Gregory was at home, she did not witness the shooting.<br><br>**Evidence:** Deposition of Erika Gregory at 55:20-56:5, attached as Exhibit C to the Declaration of Furah Z. Faruqui. | 43. Disputed. Gregory was a percipient witness, but not an eyewitness.<br><br>At the time Calhoun entered the yard, Gregory was working at her computer in her home office, waiting for the nanny to drop off five-year-old Lucy from preschool. |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN          Page 55
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | CITY DEFENDANTS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE |
|---|---|---|
| | | Belle and Flicka were outside, and the puppy was inside the home with Gregory.<br><br>Gregory was sitting at her desk, with her back to the window that faced the wraparound porch and front yard.<br><br>Gregory typically heard when people walked through the gate when she was in her office.<br><br>When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.<br><br>Gregory never heard any sounds from the direction of the gate when Calhoun arrived; the first thing alerting Gregory to Calhoun's presence on her property was the sound of gunshots.<br><br>**Evidence:** Gregory Depo at 21:15-20, 31:17-20, 35:1-8, 36:1-3, 42:19-44:10, 54:18-23, 59:3-22; Gregory Decl ¶¶ 3, 4. |

Dated: August 8, 2014

_____ /s/ - "Nick Casper" _____
Nick Casper
**Casper, Meadows, Schwartz & Cook**
Attorneys for Plaintiffs ERIKA GREGORY and LOREN MOLLNER

**CASPER, MEADOWS, SCHWARTZ & COOK**
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN     Page 56
PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS