1    Nick Casper (State Bar No. 244637)
**CASPER, MEADOWS, SCHWARTZ & COOK**
2    A Professional Corporation
2121 North California Blvd., Suite 1020
3    Walnut Creek, California 94596
Telephone: (925) 947-1147
4    Facsimile: (925) 947-1131

5

6    Attorneys for Plaintiffs ERIKA GREGORY and
LOREN MOLLNER

7

8                 UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| ERIKA GREGORY and LOREN MOLLNER, | CASE NO.: 2:13-CV-00320-KJM-KJN |
| Plaintiffs, | **PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| CITY OF VALLEJO; former VPD CHIEF ROBERT NICHELINI, individually and in his official capacity; VPD OFFICER CHASE CALHOUN, individually; and DOES 1 through 50, | Judge: Hon. Kimberly J. Mueller<br>DATE: August 22, 2014<br>TIME: 10:00 a.m.<br>CRTRM: 3, 15th Floor |
| Defendants. | |

Plaintiffs ERIKA GREGORY and LOREN MOLLNER submit the following Separate Statement of Undisputed Facts in Support of Opposition to Motion for Summary Judgment, as follows:

| PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 1.   Plaintiffs are a married couple with two children under the age of ten.<br><br>**Evidence:** Deposition of Erika Gregory ("Gregory Depo"), Ex 1 to Declaration of Nick Casper in Support of Plaintiffs' | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | Opposition ("Casper Decl") at 10:3-7; Deposition of Loren Mollner ("Mollner Depo), Ex 2 to Casper Decl at 6:15-21, 7:18-25). | |
| 2. | Gregory operates her own consulting business in San Francisco with seven employees, and Mollner is employed by the U.S. Coast Guard under the U.S. Department of Homeland Security as a real property specialist.<br><br>**Evidence:** Gregory Depo at 11:8-13:4; Mollner Depo at 8:2-11. | |
| 3. | Plaintiffs own a home at 47 Kentucky Street in Vallejo, where they lived from 2002 until July 2012.<br><br>**Evidence:** Gregory Depo at 9:19-25, 10:14-20; Mollner Depo at 27:3-9, 30:16-18. | |
| 4. | At the time of the incident, Plaintiffs owned three dogs: fourteen-year-old Flicka, eleven-year-old Belle, and Holly, a puppy.<br><br>**Evidence:** Gregory Depo at 58:15-59:2. | |
| 5. | Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten Belle when she was approximately nine weeks old.<br><br>**Evidence:** Gregory Depo at 58:22-23, 60:5-10. | |
| 6. | Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds. | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | **Evidence:** Declaration of Erika Gregory in Support of Plaintiffs' Opposition ("Gregory Decl") ¶ 2; Ex 3 to Casper Decl [Photo of Belle and Flicka]. | |
| 7. | During the more than ten years that Plaintiffs owned Belle, she had never bitten a person or been involved in any altercations with other dogs. Belle and Flicka also got along with each other.<br><br>**Evidence:** Gregory Depo at 59:23-24, 60:11-17. | |
| 8. | Elizabeth Coudright ("Coudright") was Plaintiffs' tenant at 47 Kentucky Street, living in the unit below their home from July 15, 2009 until July 15, 2012.<br><br>**Evidence:** Declaration of Elizabeth Coudright in Support of Plaintiffs' Opposition ("Coudright Decl") ¶ 1. | |
| 9. | When Coudright first viewed the unit in 2009 after telling Mollner that she was comfortable with dogs, she saw two dogs, Belle and Flicka, come bounding to the gate, barking and wagging their tails. She entered the property by herself and did not feel threatened by their presence.<br><br>**Evidence:** Coudright Decl ¶ 2. | |
| 10. | Coudright's apartment was directly below Plaintiffs' home and they shared common space behind their completely fenced property for three years. She interacted with Belle every day, and when the family would go out of town, Coudright would dog sit for the family.<br><br>**Evidence:** Coudright Decl ¶ 3. | |
| 11. | Coudright had friends come to visit and | |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | they were able to enter the property without any issues from Belle or Flicka. Coudright found Belle to be a friendly, playful lovable dog.<br><br>**Evidence:**  Coudright Decl ¶ 4. | |
| 12. | Plaintiffs and Coudright had a bi-monthly delivery of fresh vegetables to the house that would be left on the porch, and there was never a complaint or request to lock up the dogs.<br><br>**Evidence:**  Coudright Decl ¶ 5. | |
| 13. | Coudright also observed Belle as being very good with the family's children, as Belle had been with Plaintiffs prior to the arrival of children. Belle tolerated the kids as they rolled over her and tugged at her ears, and even when they would accidently hurt her while roughhousing.<br><br>**Evidence:**  Coudright Decl ¶ 6. | |
| 14. | Coudright states that Belle and Flicka sometimes barked and occasionally ran toward visitors to eagerly greet them. The property is on a slope, and when the dogs were at the bottom of the property and they heard the bells on the top gate jingle, they came running to the top of the property. Belle and Flicka listened to commands, and were well behaved and socialized.<br><br>**Evidence:**  Coudright Decl ¶ 7. | |
| 15. | Coudright had never seen either Belle or Flicka attack, bite, or show any aggression to any of the many visitors to the property in the three years that she lived at 47 Kentucky Street. *Id.* at 8. | |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | **Evidence:** Coudright Decl ¶ 8. | |
| 16. | Jan Gregory ("J. Gregory") is Erika's mother, has owned dogs for over fifty years, and knew Belle since she was a puppy.<br><br>**Evidence:** Declaration of Jan Gregory in Support of Plaintiffs' Opposition ("J. Gregory Decl") ¶¶ 1-3. | |
| 17. | Over eleven years, J. Gregory saw Belle in a variety of contexts: in Belle's own home – both at large gatherings when she didn't know all the guests and when J. Gregory was the sole visitor – and in J. Gregory's home. In all of these circumstances, J. Gregory saw Belle as relaxed and at ease with both people and other dogs, composed and amiable.<br><br>**Evidence:** J. Gregory Decl ¶ 4. | |
| 18. | When J. Gregory visited her daughter's home, Belle always came to the gate and greeted J. Gregory enthusiastically, approaching in a friendly fashion. On a couple of occasions when J. Gregory was present, Belle barked briefly at a UPS driver, as many dogs would, but subsided quickly. The delivery driver came through the gate easily and confidently to deliver parcels, showing no sign of feeling threatened.<br><br>**Evidence:** J. Gregory Decl ¶ 5. | |
| 19. | J. Gregory and Plaintiffs' family walked their dogs at the Point Isabel off-lead dog play area. Belle behaved just as one would want a dog to do: she ran, swam, greeted other dogs, and showed no fear or aggression toward people or dogs at the site. J. Gregory found Belle to be a sweet, | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | well-mannered and even-tempered dog.<br><br>**Evidence:**  J. Gregory Decl ¶¶ 6, 7. | |
| 20. | On Thursday or Friday, May 10 or 11, 2012, Gregory was traveling for work and learned that her personal bank account had been overdrawn when there should have been sufficient funds. After looking at copies of deposited checks online, Gregory discovered that someone had stolen six or seven checks from her personal checkbook and fraudulently written and signed these checks in an amount totaling approximately $5,000.<br><br>**Evidence:**  Gregory Depo at 23:2-24:7. | |
| 21. | Gregory contacted her bank (Umpqua Bank) to report the theft, and an assigned bank investigator instructed her to file a report with VPD to increase the chances of bank reimbursement.<br><br>**Evidence:**  Gregory Depo at 24:9-25:19. | |
| 22. | On May 11, 2012, Gregory called VPD, but no one picked up the line, so she submitted an online report through VPD's website. Gregory never received a response from VPD to her online report, other than an electronic confirmation at the time of submission.<br><br>**Evidence:**  Gregory Depo at 25:2-5, 25:22-26:8, 27:16-21. | |
| 23. | Early the following week, Gregory again spoke with the bank investigator, who told Gregory that she had also called VPD, but had not received a response.<br><br>**Evidence:**  Gregory Depo at 25:20-21, 26:10-15. | |

CASPER, MEADOWS, SCHWARTZ & COOK<br>2121 N. California Blvd.,<br>Suite 1020<br>Walnut Creek, CA  94596<br>TEL: (925) 947-1147<br>FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| 24. | On Wednesday, May 16, 2012, Gregory was working from home and called the bank investigator, who told her she needed to call VPD again to initiate an investigation into the theft.<br><br>**Evidence:** Gregory Depo at 21:8-20, 26:16-27:6. | |
| 25. | At approximately 11:00 a.m., Gregory called the Investigations Unit at VPD to find out the status of her report, and a female VPD employee indicated that nothing had been done because VPD did not have enough detectives to investigate crimes other than murders.<br><br>**Evidence:** Gregory Depo at 27:6-28:22; Deposition of Chase Calhoun ("Calhoun Depo"), Ex 4 to Casper Decl at 44:3-21. | |
| 26. | The VPD employee transferred Gregory to dispatch, and a dispatcher determined that Gregory needed to speak with Investigations, transferring her back to the first VPD employee with whom Gregory spoke.<br><br>**Evidence:** Gregory Depo at 28:22-29:13, 30:5-16. | |
| 27. | The Investigations Unit employee then told Gregory that she "can try and force a message through to dispatch, but I can't guarantee you anything" and said goodbye. Id. at. Gregory did not know what "forcing a message through dispatch" meant.<br><br>**Evidence:** Gregory Depo at 29:14-30:4. | |
| 28. | Calhoun started his shift on May 16, 2012 at 7:00 a.m. | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | **Evidence:** Calhoun Depo at 34:1-3. | |
| 29. | The shift was not Calhoun's regularly-assigned shift, and was an extra overtime shift for Calhoun.<br><br>**Evidence:** Calhoun Depo at 31:10-33:1. | |
| 30. | Calhoun was by himself and not working with a partner that shift.<br><br>**Evidence:** Calhoun Depo at 48:1-6. | |
| 31. | At 10:59 a.m. on May 16, 2012, VPD Investigations Clerk/Secretary Stephanie Boursaw ("Boursaw") initiated a call for service out to 47 Kentucky Street, listing Erika Gregory as the reporting party, and listing her phone number.<br><br>**Evidence:** Ex 5 to Casper Decl [CAD Log], | |
| 32. | The CAD entry lists as the patrol unit to respond as "PD/2P6," which was an identification referring to Calhoun's patrol unit. According to Calhoun, "2" represents the shift, "P" is for "patrol", and "6" was "the beat assignment, the area that I was assigned to work."<br><br>**Evidence:** Ex 5 to Casper Decl; Calhoun Depo at 37:12-15, 37:20-22. | |
| 33. | Calhoun states that the calls for service would appear in the computer in the patrol cars.<br><br>**Evidence:** Calhoun Depo at 39:13-40:4. | |
| 34. | One minute later, at 11:00 a.m., Boursaw listed that the reporting party had filed a report, including a report number, and | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | indicated that the reporting party [Gregory] "has suspect information provided to her by the bank" and "would like to speak to an officer to provide suspect information."<br><br>**Evidence:** Ex 5 to Casper Decl. | |
| 35. | At 11:17 a.m., seventeen minutes after the initial call for service to "PD/2P6", dispatch recommended several other VPD patrol units to respond.<br><br>**Evidence:** Ex 5 to Casper Decl. | |
| 36. | At 12:05 p.m., the call for service "timed out."<br><br>**Evidence:** Ex 5 to Casper Decl. | |
| 37. | At 12:08 p.m., the call for service to 47 Kentucky Street was renewed, with "PD/2P6" and other units recommended, at which time Calhoun finally picked up the call for service.<br><br>**Evidence:** Ex 5 to Casper Decl; Calhoun Depo at 36:13-14. | |
| 38. | Calhoun does not recall if he ultimately asked to be sent to the call or was directly dispatched to the call, but "either way, it was in my area, so it was something I had to deal with."<br><br>**Evidence:** Calhoun Depo at 40:1-12. | |
| 39. | Calhoun recalls that he was in his car when he was dispatched to 47 Kentucky Street, but does not recall where in the city he was at the time.<br><br>**Evidence:** Calhoun Depo at 48:7-11. | |
| | | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*      Case No. 2:13-CV-00320-KJM-KJN                    Page 9
PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| 40. | Calhoun looked up the report number through the computer system in his patrol car and determined that a police officer had not made a report on the incident yet, but was aware that a prior report had been made by the reporting party, such as through VPD's online system.<br><br>**Evidence:** Calhoun Depo at 40:18-41:23. | |
| 41. | Calhoun had not had any involvement with Gregory's theft report prior to the call for service.<br><br>**Evidence:** Calhoun Depo at 41:5-10. | |
| 42. | Calhoun was aware that he was not responding to a crime in progress, and that he was following up on a prior report involving a theft from a bank account.<br><br>**Evidence:** Calhoun Depo at 45:14-46:7. | |
| 43. | He did not confirm that Gregory was expecting VPD to send an officer to her property to take a report, but states, "[u]sually when people call the police to report a crime, they expect us to respond."<br><br>**Evidence:** Calhoun Depo at 46:12-16. | |
| 44. | Plaintiffs' home was situated on the corners of Kentucky and Trinity Streets, and was surrounded by a low white picket fence.<br><br>**Evidence:** Gregory Depo at 33:2-12.; Ex 6 to Casper Decl [photograph of Plaintiffs' fence line from Kentucky Street]. | |
| 45. | The property had two entrances, with the front patio and yard accessed through a | |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | wooden gate on Kentucky Street.<br><br>**Evidence:** Gregory Depo at 34:11-18, 42:1-6, 45:22-46:4; Ex 7 to Casper Decl [photograph of gate taken from Plaintiffs' property looking out toward Kentucky Street]; Ex 8 to Casper Decl [photograph of gate from Kentucky Street looking into Plaintiffs' property]. | |
| 46. | The gate led to a short cobbled path, opening up to the front patio. Continuing straight led to Plaintiffs' front yard and house, with the front door located on the wrap-around porch approximately twenty feet from the gate.<br><br>**Evidence:** Gregory Depo at 36:17-37:1, 42:10-24, 46:9-18; Ex 9 to Casper Decl [photograph looking from gate into Plaintiffs' property]; Ex 10 to Casper Decl [photograph of Plaintiffs' front yard and house]. | |
| 47. | At the time of the incident, there was a cowbell that hung from the gate that, when shaken, Gregory and others could hear from inside her home.<br><br>**Evidence:** Gregory Depo at 35:1-10, 41:23-25; Coudright Decl ¶ 7. | |
| 48. | On May 16, 2012, there was objective indicia of the presence of dogs on the property: there were children's and dog toys in the front patio, and there was wire fencing extending along the wooden fence line to keep the puppy, Holly, from jumping out.<br><br>**Evidence:** Gregory Depo at 41:3-15, 49:16-20; Mollner Depo at 32:12-33:5; Ex 11 to Casper Decl [photograph of wire fencing attached to picket fence]. | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN          Page 11
PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| 49. | Calhoun parked his patrol car near Plaintiffs' property and approached the gate.<br><br>**Evidence:** Calhoun Depo at 48:23-49:13. | |
| 50. | When Calhoun saw Plaintiffs' property, his primary concern was the presence of dogs due to the fenced-in yard, and the difficulty of seeing into the property due to foliage.<br><br>**Evidence:** Calhoun Depo at 51:5-51:21, 82:24-83:3. | |
| 51. | Calhoun walked up to the gate and peered inside the yard, observing children's toys, such as a wading pool; he does not recall seeing dog toys, but maintains that he was concerned about the presence of dogs.<br><br>**Evidence:** Calhoun Depo at 52:12-53:18. | |
| 52. | Calhoun did not call out his presence at the gate, nor did he call the reporting party to inform Gregory of his arrival because "[w]e don't generally do that . . . we respond to calls all day long, and calls like this, we go up and knock on the door; that's kind of how it works." He says "we don't walk up to somebody's house yelling and hooting and hollering and screaming and stuff, so we just walk up and knock on the door."<br><br>**Evidence:** Calhoun Depo at 53:19-25, 55:23-56:4, 62:24-63:5. | |
| 53. | Calhoun did not observe a cattle bell attached to the gate.<br><br>**Evidence:** Calhoun Depo at 56:5-7. | |
| 54. | Calhoun states that he shook the gate and | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

|  | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
|  | tapped the gate with his flashlight, per his habit when entering properties where dogs might be startled.<br><br>**Evidence:** Calhoun Depo at 54:10-55:1. |  |
| 55. | Calhoun was ultimately "confident" that there were no dogs on the premises partly because there was a small picket fence and "I didn't see wiring."<br><br>**Evidence:** Calhoun Depo at 56:8-11, 83:8-22. |  |
| 56. | Calhoun did not take any further measures to determine whether there were dogs on the property after entering through the gate.<br><br>**Evidence:** Calhoun Depo at 65:13-22. |  |
| 57. | At the time Calhoun entered the yard, Gregory was working at her computer in her home office, waiting for the nanny to drop off five-year-old Lucy from preschool.<br><br>**Evidence:** Gregory Depo at 21:15-20, 31:17-20, 54:18-23; Ex 10 to Casper Decl. |  |
| 58. | Belle and Flicka were outside, and the puppy was inside the home with Gregory.<br><br>**Evidence:** Gregory Depo at 59:3-22. |  |
| 59. | Gregory was sitting at her desk, with her back to the window that faced the wraparound porch and front yard.<br><br>**Evidence:** Gregory Depo at 42:19-44:10. |  |
| 60. | Gregory typically heard when people walked through the gate when she was in |  |

CASPER, MEADOWS, SCHWARTZ & COOK<br>2121 N. California Blvd.,<br>Suite 1020<br>Walnut Creek, CA  94596<br>TEL: (925) 947-1147<br>FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | her office.<br><br>**Evidence:** Gregory Depo at 35:1-8, 36:1-3; Gregory Decl ¶ 3. | |
| 61. | When Gregory was home during the day, she would typically leave the dogs in the fenced-in yard because they liked to lie in the sun, and they alerted Gregory to when people were at the gate by barking.<br><br>**Evidence:** Gregory Depo at 59:17-22. | |
| 62. | Gregory never heard any sounds from the direction of the gate when Calhoun arrived; the first thing alerting Gregory to Calhoun's presence on her property was the sound of gunshots.<br><br>**Evidence:** Gregory Decl ¶ 4. | |
| 63. | According to Calhoun, when he was approximately halfway toward the house, he saw two dogs charging at him at a full sprint from the left side of the house. Belle, the black-and-tan one, was slightly ahead of Flicka.<br><br>**Evidence:** Calhoun Depo at 66:16-19, 67:9-68:5; Ex 3 to Casper Decl. | |
| 64. | Calhoun states that the dogs were barking as they approached.<br><br>**Evidence:** Calhoun Depo at 70:1-2. | |
| 65. | Within "a second or two," Calhoun states the following occurred: he recognized that the dogs "didn't appear to be friendly"; he noticed the dogs snarling; he observed that the hairs on their backs were raised and that their tails were straight; determined that the dogs "were going to attack me"; retreated five or six | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*    Case No. 2:13-CV-00320-KJM-KJN    Page 14
PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | feet toward the gate; and fired two shots, killing the lead dog, Belle.<br><br>**Evidence:** Calhoun Depo at 70:3-72:3, 79:17-20, 89:21-90:3, 96:18-22. | |
| 66. | Calhoun did not recognize either dog as being a pit bull.<br><br>**Evidence:** Calhoun Depo at 68:10-14. | |
| 67. | Calhoun states he did not have time to retreat through the gate or otherwise from the yard, but he was "surprised that I was able to . . . get my firearm out of the holster fast enough and fire those rounds . . ."<br><br>**Evidence:** Calhoun Depo at 72:13-73:20. | |
| 68. | The holster Calhoun was using on that date was a "Level 3" holster, which requires the release of two snaps and rocking the gun forward to release it – the "triple threat" holster."<br><br>**Evidence:** Calhoun Dept at 62:2-7. | |
| 69. | The other dog, Flicka, ran away after he shot Belle.<br><br>**Evidence:** Calhoun Depo at 71:19-20. | |
| 70. | Calhoun says that he shot Belle at "point-blank range" because it was "getting ready to" leap up and bite him.<br><br>**Evidence:** Calhoun Depo at 75:5-9. | |
| 71. | Calhoun does not recall if the dog had "jumped or . . . was starting to jump."<br><br>**Evidence:** Calhoun Depo at 76:10-12. | |
| | | |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| 72. | Calhoun fired two shots, striking her in the snout, and through the mouth and throat.<br><br>**Evidence:** Calhoun Depo at 78:22-79:5; Ex 12 to Casper Decl [photograph of Belle post-shooting]. | |
| 73. | Calhoun believes he was further than the kiddie pool in the yard when he started retreating back toward the gate, shooting Belle at approximately at her final point of rest.<br><br>**Evidence:** Calhoun Depo at 76:21-77:25, 89:13-20; Ex 13 to Casper Decl [photograph of Belle's point of rest]; Ex 14 to Casper Decl [photograph of closer view of Belle's point of rest]. | |
| 74. | Calhoun was not concerned about the presence of children because he was firing his gun toward the ground.<br><br>**Evidence:** Calhoun Depo at 78:1-11. | |
| 75. | Gregory heard the shots from nearby in the home office and "hit the floor" because she thought "somebody was trying to shoot me."<br><br>**Evidence:** Gregory Depo at 31:17-25, 54:9-55:1. | |
| 76. | Calhoun was not bitten by either dog.<br><br>**Evidence:** Calhoun Depo at 75:10-12. | |
| 77. | Calhoun was the only eye witness to the shooting.<br><br>**Evidence:** Gregory Depo at 55:20-56:5 | |
| 78. | In the wake of the incident, Plaintiffs | |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | have experienced severe emotional distress.<br><br>**Evidence:** Gregory Depo at 70:15-72:15, 72:18-73:9; Mollner Depo at 12:5-15:4. | |
| 79. | After approximately eight years of living at 47 Kentucky Street, Plaintiffs and their two children moved out of their home and out of Vallejo in July 2012 as a result of the trauma from the incident.<br><br>**Evidence:** Gregory Depo at 10:14-11:2; Mollner Depo at 30:16-18. | |
| 80. | On December 2, 2013, Calhoun was terminated from VPD.<br><br>**Evidence:** Ex 15 to Casper Decl [Notice of Discipline]. | |
| 81. | The termination was the result of an Internal Affairs Investigation ("IA"), conducted by Lieutenant Sid Dejesus ("Lt. DeJesus") into Calhoun's misconduct ranging from March 2012 until August 2013, during which time Calhoun was having sexual contacts with a woman, █████████, while Calhoun was on his patrol shifts, in remote locations, and frequently in his patrol vehicle.<br><br>**Evidence:** Ex 16 to Casper Decl [VPD Internal Affairs Investigation Report No. 2013-03]. | |
| 82. | █████ ended the relationship and notified VPD of Calhoun's wrongdoing in August 2013 after she discovered that not only had Calhoun been married to another woman since September 2012, of which █████ was unaware, but that Calhoun was also seeing another woman during this | |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | timeframe, ███ **Evidence:** Ex 16 to Casper Decl at pp. 1, 11, 18. | |
| 83. | The IA charged Calhoun with seven violations of department policy; all seven charges were sustained by three superior officers, including Chief Kreins. **Evidence:** Ex 16 to Casper Decl at pp. 2, 4-6. | |
| 84. | Chief Kreins, in his Notice of Discipline, states, "The nature and extent of you (sic) misconduct is shocking, which misconduct clearly was unbecoming and brought into disrepute the Department and its other personnel.  Your actions demonstrate serious, repeated and perplexing failures in judgment that make you unfit to be a police officer." **Evidence:** Ex 15 to Casper Decl at p. 2. | |
| 85. | Lt. DeJesus interviewed Calhoun, and Calhoun confirmed he began a sexual relationship with ███ in March 2012. **Evidence:** Ex 16 to Casper Decl at p. 16. | |
| 86. | Lt. DeJesus remarked in the IA Report that "Officer Calhoun appeared to me to have selective memory loss in relation to the frequency of his sexual contacts with ████████, and specific dates related to the same." **Evidence:** Ex 16 to Casper Decl at p. 16. | |
| 87. | Lt. DeJesus stated that "Officer Calhoun would attempt to minimize the time that it would take for him to complete these sexual acts by describing the duration of | |

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | time as lasting only 10 to 15 minutes at a time." **Evidence:** Ex 16 to Casper Decl at p. 17. | |
| 88. | Calhoun did confirm that he would take ███ to Mare Island for these encounters. **Evidence:** Ex 16 to Casper Decl at p. 17. | |
| 89. | Lt. DeJesus states that Calhoun appeared "to minimize the amount of times he and ███ would actually have sexual intercourse while in a police car on Mare Island . . ." **Evidence:** Ex 16 to Casper Decl at p. 17. | |
| 90. | Calhoun only admitted to taking ███ to the Mare Island Training Facility ("MITC") after Lt. DeJesus confronted him with a photograph of the location. **Evidence:** Ex 16 to Casper Decl at pp. 10, 17-18. | |
| 91. | When asked about having sex with ███ at another remote location (VPD Traffic Office), Calhoun responded, "I've got to be honest, I can't recall having sex there." **Evidence:** Ex 16 to Casper Decl at p. 19. | |
| 92. | Calhoun denied missing Calls for Service, despite the statement of Sergeant B. Clark ("Sgt. Clark") that it was an ongoing problem for Calhoun. **Evidence:** Ex 16 to Casper Decl at pp. 14, 18. | |
| 93. | Calhoun confirmed that he started a sexual relationship with ███ after | |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | pulling her over for a traffic violation, but stated he only saw her while off-duty, despite his pattern of behavior with ███. **Evidence:** Ex 16 to Casper Decl at pp. 19-20. | |
| 94. | DeJesus could not corroborate Calhoun's story because ███ would not return Lt. DeJesus's calls. **Evidence:** Ex 16 to Casper Decl at p. 20. | |
| 95. | From April 2012 through February 2013, ███ lived at ███ Santa Clara Street. **Evidence:** Ex 16 to Casper Decl at p. 9. | |
| 96. | From March 2, 2012 through January 9, 2013, Calhoun worked frequently as a solo beat officer assigned to "Beat 6," which Lt. DeJesus found of significance because Beat 6 is in close proximity to ███ house on Santa Clara Street. **Evidence:** Ex 16 to Casper Decl at p. 3. | |
| 97. | Calhoun was working as a solo beat officer assigned to "Beat 6" on May 16, 2012 when he shot and killed Belle. **Evidence:** Calhoun Depo at 37:20-22, 48:1-6. | |
| 98. | During the time ███ lived on Santa Clara Street, she and Calhoun had sexual intercourse while he was on duty once or twice a week. **Evidence:** Ex 16 to Casper Decl at p. 9. | |
| 99. | During this timeframe, the IA revealed that Calhoun took ███ to remote | |

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN     Page 20
PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | locations to have sex while on his shift, including to a recycling center on Mare Island and to MITC<br><br>**Evidence:** Ex 16 to Casper Decl at pp. 9-10. | |
| 100. | Lt. DeJesus interviewed Sgt. Clark as part of the IA.<br><br>**Evidence:** Ex 16 to Casper Decl at p. 14. | |
| 101. | The IA states, "Sergeant Clark spoke of Officer Calhoun having 'routinely' missed 'Calls for Service,' and how dispatch would need to 'advise a second time' at which point Officer Calhoun would then answer for his designated CFS."<br><br>**Evidence:** Ex 16 to Casper Decl at p. 14. | |
| 102. | In Lt. DeJesus's findings of a violation of Availability of Duty (VPD General Order B-1, III, B1.4), he states:<br><br>"During the course of the investigation, I was able to confirm the actual locations where Officer Calhoun would drive ██ ██████████  for the purpose of having sexual intercourse.  These locations were established to be in remote areas concealed from the general public where Officer Calhoun could assure himself of the privacy he would need to complete these sexual encounters.  The location on Mare Island near Alco Recycling, which is located on the furthest North-West corner of the Island, the PG&E substation in Glen Clove, and Gilcrest, would necessarily take Officer Calhoun out of service for extended periods and very likely resulted in missed or delayed responses to Calls for Service as | |

CASPER, MEADOWS,<br>SCHWARTZ & COOK<br>2121 N. California Blvd.,<br>Suite 1020<br>Walnut Creek, CA  94596<br>TEL: (925) 947-1147<br>FAX (925) 947-1131

| | PLAINTIFFS' UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|---|
| | confirmed by Sergeant B. Clark.<br><br>Officer Calhoun would not advise Communications of his duty status changes which occurred each time he allowed ▮▮▮▮▮▮ into his police care which also took him out of service by his own action."<br><br>**Evidence:** Ex 16 to Casper Decl at p. 21. | |
| 103. | In Lt. DeJesus's findings of a violation of Duty Responsibilities (VPD General Order B-1, III, B1.14), he states:<br><br>By virtue of Officer Calhoun taking himself out of service without lawful and/or reasonable justification, he was not in a position to respond expeditiously to calls for service either directed to him by Communications, or calls from other uniformed officers who may have needed assistance or backup, or from citizens of this City.  By virtue of him having an unauthorized civilian inside his police car, he was no longer in a position to respond and/or perform his duties in a prompt or safe manner.<br><br>**Evidence:** Ex 16 to Casper Decl at p. 22. | |

Dated: August 8, 2014

_____ /s/ "Nick Casper"_____

Nick Casper

**CASPER, MEADOWS, SCHWARTZ & COOK**

Attorneys for Plaintiffs ERIKA GREGORY and LOREN MOLLNER

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131