1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  ERIKA GREGORY, et al.,                    No. 2:13-cv-00320-KJM-KJN

12              Plaintiffs,

13      v.                                     ORDER

14  CITY OF VALLEJO, et al.,

15              Defendants.

16

17          This matter is before the court on the motion by the City of Vallejo ("City"),

18  former Chief of the City Police Department ("PD") Robert Nichelini ("Chief Nichelini"), and

19  former police officer Chase Calhoun ("Officer Calhoun") (collectively "defendants") for

20  summary judgment.  (Defs.' Mot. Summ. J., ECF No. 29.)  Erika Gregory ("Ms. Gregory") and

21  Loren Mollner ("Mr. Mollner") (collectively "plaintiffs") oppose the motion.  (Pls.' Opp'n, ECF

22  No. 43.)  The court held a hearing on the matter on August 29, 2014, at which Nick Casper

23  appeared for plaintiffs and Furah Faruqui for defendants.  As explained below, the court DENIES

24  in part and GRANTS in part defendants' motion.

25  /////

26  /////

27  /////

28  /////

                                        1

1    I.    UNDISPUTED FACTS[1]

2            The claims in this case brought under 42 U.S.C. § 1983 arise out of Officer

3    Calhoun's killing of plaintiffs' dog, Belle.  (*See generally* Pls.' First Am. Compl. ("Compl."),

4    ECF No. 10.)  Plaintiffs are a married couple.  (ECF No. 45 ¶ 1.)  Belle was an eleven-year-old

5    Labrador-Catahoula-mix weighing about 70 pounds.  (Gregory Decl. ¶ 2, ECF No. 38; Gregory

6    Dep. 58:18-23, Casper Decl., Ex. 1, ECF No. 36-1.)  In addition to Belle, plaintiffs owned two

7    other dogs: Flicka, a fourteen-year-old blind and deaf Border Collie-mix; and a Labrador puppy,

8    Holly.  (*Id.*)  At the time of the challenged action, Officer Calhoun was a City police officer.

9    (ECF No. 44 ¶ 8.)  At the hearing, the parties clarified that Chief Nichelini was the City's Police

10   Chief at the time of the shooting.

11           About a week before the challenged incident, Ms. Gregory learned that her bank

12   account had been subjected to fraud.  (Gregory Dep. 23:20–24:7.)  Accordingly, on May 11,

13   2012, four days before the incident, Ms. Gregory filed a claim with the City PD through the PD's

14   website, along with filing a claim with her bank.  (*Id.* at 24:7–26:8.)  On May 16, 2012, the day of

15   the incident, on the advice of her bank investigator, Ms. Gregory contacted the City PD to learn

16   whether an investigator had been assigned to her claim.  (*Id.* at 26:9–27:11.)  The person on the

17   phone at the PD told Ms. Gregory that no investigator had been assigned to her claim and

18   transferred the call to a dispatcher.  (*Id.* at 28:2–29:5.)  As the dispatcher did not understand why

19   the call had been transferred to her, she transferred Ms. Gregory back to the investigations

20   department.  (*Id.* at 29:3–13.)  Eventually, the person at the investigations department said she

21   would "try and force a message through to dispatch . . . ."  (*Id.* at 29:3–15.)

22           The City's computer-aided dispatch log indicates that at 11:00 a.m., Ms. Gregory

23   contacted the City PD, wanting to speak "to an officer to provide suspect information . . . ."

24   (Casper Decl., Ex. 5, ECF No. 36-5.)  After more than an hour, Officer Calhoun picked up the

---

26   [1] Defendants object to plaintiffs' evidence concerning Officer Calhoun's
27   credibility and the reasons behind his termination.  (ECF No. 48 at 4–6.)  Because the court does
     not consider the materials to which defendants object in ruling on the instant motion, the court
     need not address defendants' objections.  *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th
28   Cir. 2010).

1    call at 12:11 p.m.  (*Id.*)  At the time Officer Calhoun accepted the call, he knew that the call

2    concerned an already-open case file with the City PD (Calhoun Dep. 40:18–41:4, Ex. 4, ECF No.

3    36-4) and involved claims of bank fraud (*id.* at 46:4–7).  When Officer Calhoun reported to

4    plaintiffs' residence, he was in a police uniform carrying with him, among other things, a Taser,

5    gun, pepper spray, and baton.  (ECF No. 44 ¶ 13.)  Arriving at plaintiffs' residence, Officer

6    Calhoun parked his patrol car in front and walked up to the property.  (*Id.* ¶¶ 17–18.)  Plaintiffs'

7    property was surrounded by a low white fence with a closed but unlocked gate.  (*Id.* ¶ 19.)

8    According to Officer Calhoun, when he approached the gate, he shook the gate or hit the gate

9    with his flashlight before opening it.  (Calhoun Dep. 54:13–22, Faruqui Decl., Ex. A, ECF No.

10   32-1.)  Hearing no response from the inside, Officer Calhoun entered the yard and began walking

11   towards the front door.  (ECF No. 44 ¶ 29.)  As Officer Calhoun was approaching the front door,

12   he saw Belle and Flicka moving toward him.  (*Id.* ¶ 32.)  Because Officer Calhoun "realized that

13   [he] was going to be attacked by not one, but two dogs," he drew his firearm and fired two rounds

14   killing Belle.  (Calhoun Dep. 71:15–21, ECF No. 32-1.)  Subsequently, Officer Calhoun left the

15   yard, closed the gate (ECF No. 44 ¶¶ 36–37), reported the incident and requested that an Animal

16   Control team be sent (*id.* ¶ 39).  Alarmed by the gunshots (Gregory Dep. 31:17–25, ECF No. 36-

17   1), Ms. Gregory came out of the house and saw Belle "lying in a pool of blood" (*id.* 58:9–11).  It

18   is undisputed that Officer Calhoun was the only eyewitness to the shooting.  (ECF No. 44 ¶ 42.)

19            Plaintiffs filed a complaint for damages on February 20, 2013 (*see* ECF No. 2),

20   alleging seven claims: (1) violation of the Fourth Amendment under § 1983 against Officer

21   Calhoun; (2) violation of the Fourth Amendment against the City and Chief Nichelini under

22   *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); (3) trespass

23   against Officer Calhoun; (4) trespass to chattels against Officer Calhoun; (5) conversion against

24   Officer Calhoun; (6) intentional infliction of emotional distress against Officer Calhoun; and

25   (7) violation of California Civil Code sections 52 and 52.1 (*see* Compl. at 7–14).  Defendants now

26   move for summary judgment on all of plaintiffs' claims.  (ECF No. 29.)  Plaintiffs partly oppose

27   the motion (ECF No. 43), and defendants have replied (ECF No. 48).

28   /////

3

1    II.       <u>SUMMARY JUDGMENT STANDARD</u>

2            A court will grant summary judgment "if . . . there is no genuine dispute as to any

3 material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

4 The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

5 resolved only by a finder of fact because they may reasonably be resolved in favor of either

6 party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

7            The moving party bears the initial burden of showing the district court "that there

8 is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*,

9 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

10 that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio*

11 *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular

12 parts of materials in the record . . .; or show [] that the materials cited do not establish the absence

13 or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

14 support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

15 nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

16 material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material* fact

17 . . . .  Only disputes over facts that might affect the outcome of the suit under the governing law

18 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in

19 original).

20            In deciding a motion for summary judgment, the court draws all inferences and

21 views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

22 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).   "Where the record taken as a

23 whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

24 issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*

25 *Co.*, 391 U.S. 253, 289 (1968)).

26

27            [2] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

28

1         A court may consider evidence as long as it is "admissible at trial." *Fraser v.*

2   *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the

3   evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)

4   (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the

5   burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.

6   2002). If the opposing party objects to the proposed evidence, the party seeking admission must

7   direct the district court to "authenticating documents, deposition testimony bearing on attribution,

8   hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in

9   question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86

10  (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and

11  documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240,

12  1243 (9th Cir. 1979).

13  III.    <u>DISCUSSION</u>

14      A.    Brief Summary of § 1983 Principles

15      Section 1983 provides:

16      Every person who, under color of any statute, ordinance, regulation,

17      custom, or usage, of any State or Territory or the District of
    Columbia, subjects, or causes to be subjected, any citizen of the
    United States or other person within the jurisdiction thereof to the

18      deprivation of any rights, privileges, or immunities secured by the
    Constitution and laws, shall be liable to the party injured in an

19      action at law, suit in equity, or other proper proceeding for redress .

20      . . .

21  42 U.S.C. § 1983.

22        Congress enacted section 1983 under its power derived from section 5 of the

23  Fourteenth Amendment to pass "appropriate legislation" enforcing the Fourteenth Amendment.

24  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 does not serve as an

25  independent source of substantive rights, rather it provides "a method for vindicating federal

26  rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Courts have

27  described the requirements of a section 1983 claim as: "(1) a violation of rights protected by the

28  Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4)

1  acting under color of state law." *Crumpton*, 947 F.2d at 1420.  "[Section] 1983 . . . contains no

2  state-of-mind requirement independent of that necessary to state a violation of the underlying

3  constitutional right." *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986).

4        B.    *Monell* Claims

5        At hearing, plaintiffs confirmed they were dismissing their *Monell* claim in its

6  entirety.  The court GRANTS defendants' motion as to plaintiffs' *Monell* claim.[3]

7        C.    First Claim: Violation of the Fourth Amendment

8        At the hearing, plaintiffs clarified their Fourth Amendment claim relies only on

9  Officer Calhoun's shooting of their dog.

10        1.    Reasonableness

11        Defendants argue Officer Calhoun did not violate plaintiffs' Fourth Amendment

12  right in shooting the dog because he acted in self-defense.  (ECF No. 29 at 8–11.)  In the

13  alternative, defendants argue Officer Calhoun is entitled to qualified immunity.  (*Id.* at 11–13.)

14        Plaintiffs respond there are genuine disputes of material fact as to the

15  reasonableness of Officer Calhoun's actions (ECF No. 43 at 13–18) and the constitutional right at

16  issue was clearly established, precluding Officer Calhoun's entitlement to qualified immunity (*id.*

17  at 18–19).

18        The Fourth Amendment guarantees citizens the right "to be secure in their . . .

19  effects[] against unreasonable seizures . . . ."  U.S. CONST. AMEND. IV.  The Ninth Circuit has

20  held that "[t]he killing of [a] dog is a destruction recognized as a seizure under the Fourth

21  Amendment and can constitute a cognizable claim under § 1983."  *San Jose Charter of Hells*

22  *Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005) (internal quotation

23  marks omitted, second alteration in original).  "Reasonableness is the touchstone of any seizure

24  under the Fourth Amendment."  *Id.*  Hence, to comply with the Fourth Amendment, the shooting

25        [3] The parties have not complied with the court's Civil Standing Order, directing
26  parties to meet and confer before filing a motion to narrow their disputes.  If the parties had met
  and conferred before the filing of the instant motion, defendants would not have needed to devote
27  three pages of their brief to discussing two claims and it would have saved the court's limited
  resources.  Future violations of the court's Standing Orders will result in the issuance of an order
28  to show cause why sanctions should not be imposed.

1    and killing of plaintiffs' dog "must have been reasonable under the circumstances." *Id.*  Courts

2    "look to the totality of the circumstances to determine whether the destruction of property was

3    reasonably necessary to effectuate the performance of the law enforcement officer's duties." *Id.*

4    "A seizure becomes unlawful when it is more intrusive than necessary." *Id.* (internal quotation

5    marks omitted).  To determine whether Officer Calhoun's shooting of Belle was reasonable, the

6    court balances "the nature and quality of the intrusion on [plaintiffs'] Fourth Amendment interests

7    against the countervailing governmental interests at stake." *Id.* (internal quotation marks

8    omitted).

9            The court finds there is a genuine dispute as to whether the killing of plaintiffs'

10   dog was reasonable because the underlying facts relevant to that determination are disputed.  In

11   balancing the interests identified, on plaintiffs' side of the scale, the killing of a dog is a severe

12   intrusion into a person's Fourth Amendment interest because "dogs are more than just a personal

13   effect": "The emotional attachment to a family's dog is not comparable to a possessory interest in

14   furniture." *Id.*  On defendants' side of the scale, Officer Calhoun's safety is the government's

15   interest.  (*See* ECF No. 29 at 9.)

16           According to Officer Calhoun, when he entered the yard and began walking

17   towards the front door, he heard a sound and saw "[Flicka and Belle] charging around the corner

18   of the house at . . . a full sprint." (Calhoun Dep. 66:12–19, ECF No. 32-1.)  He noticed the dogs

19   were barking and snarling; Belle's teeth were showing; Belle had raised hair on the back of her

20   neck; and Belle's tail was straight.  (*Id.* 70:5–14.)  Officer Calhoun further states that "from, I

21   guess, my personal experience maybe and some of the training," if a dog is friendly, the dog

22   would have a wagging tail; whereas, if a dog is aggressive, "usually those tails are dead straight."

23   (*Id.* 70:18–25.)  When asked whether he was sure he "observed those traits of the dog at the

24   time[,]" Officer Calhoun responded: "In that split second, yes." (*Id.* 71:6–8.)

25           Plaintiffs, on the other hand, dispute the dogs' aggressiveness.  They introduce the

26   declaration of their tenant at the time, Elizabeth Coudright ("Ms. Coudright"), who resided at

27   plaintiffs' residence for three years, including on the day of the incident.  (Coudright Decl. ¶ 1,

28   ECF No. 37.)  Ms. Coudright states on the first day she went to plaintiffs' property, she saw Belle

1   and Flicka "come bounding to the gate, barking and wagging their tails," but she entered the

2   property by herself and felt no threat by the dogs' presence.  (*Id.* ¶ 2.)  Ms. Coudright interacted

3   with Belle every day, and her friends would enter the property without any issues.  (*Id.* ¶¶ 3–4.)

4   In addition, Ms. Coudright recalls the following: "We had a bi-monthly delivery of fresh

5   vegetables to the house that would be left on the porch, and there was never a complaint or

6   request to lock up the dogs."  (*Id.* ¶ 5.)  Ms. Coudright never saw Belle or Flicka "attack, bite, or

7   show any aggression to any of the many visitors to the property in the three years that [she] lived

8   there."  (*Id.* ¶ 8.)  Ms. Gregory's mother, Jan Gregory, corroborates Ms. Coudright's observations

9   by stating she saw a few times how a UPS driver entered through plaintiffs' gate without any

10  issues (Jan Gregory Decl. ¶ 5, ECF No. 39): "Belle was, in short, a sweet, well-mannered and

11  even-tempered dog . . . ."  (*Id.* ¶ 7.)  Finally, Ms. Gregory disputes Belle's aggressiveness by

12  stating that Belle had never bitten anyone or other dogs.  (Gregory Dep. 60:11–17, ECF No. 36-

13  1.)

14          On summary judgment, the court cannot determine as a matter of law that a

15  reasonable jury would necessarily find Officer Calhoun perceived an immediate threat of death or

16  serious bodily injury at the time he shot Belle.  Officer Calhoun is the only eyewitness.  *See Scott*

17  *v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Deadly force cases pose a particularly difficult

18  problem . . . because the officer defendant is often the only surviving eyewitness.").  The court

19  "may not simply accept what may be a self-serving account by [Officer Calhoun]" and based on

20  that testimony find that there is no genuine dispute of material fact.  *Id.*  Rather, the court "must

21  also look at the circumstantial evidence that, if believed, would tend to discredit [Officer

22  Calhoun's] story, and consider whether [that] evidence could convince a rational factfinder that

23  [Officer Calhoun] acted unreasonably."  *Id.*

24          At least four people—plaintiffs, Ms. Gregory's mother, and Ms. Coudright—agree

25  the dogs were not aggressive and that many individuals would enter the property without any

26  fear.  While "police officers are often forced to make split-second judgments—in circumstances

27  that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a

28  particular situation[,]" *Graham v. Connor*, 490 U.S. 386, 397 (1989), "[a]lso relevant to

1    reasonableness are the alternative methods of capturing or subduing . . . available to the officers,"

2    *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) (internal quotation marks

3    omitted).  Because Officer Calhoun carried a Taser and a pepper spray with him, a jury could

4    conclude Officer Calhoun acted unreasonably in shooting Belle when he had less intrusive and

5    less destructive alternatives readily available.  In viewing the evidence in the light most favorable

6    to plaintiffs, as required, a jury could find Officer Calhoun overreacted and acted unreasonably in

7    shooting Belle.

8         Because the court finds genuine issues of material fact as to whether Officer

9    Calhoun acted reasonably, the court next addresses whether plaintiffs' Fourth Amendment rights

10   were clearly established at the time of the shooting.  *See Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct.

11   1861, 1866 (2014).

12                    2.        Qualified Immunity

13        Defendants argue Officer Calhoun is entitled to qualified immunity because

14   plaintiffs cannot show their Fourth Amendment rights were clearly established at the time of the

15   shooting.  (Defs.' Reply at 8–9, ECF No. 48.)  Plaintiffs respond plaintiffs' right to be free from

16   an unreasonable killing of Belle was clearly established at the time.  (ECF No. 43 at 18–19.)

17        At summary judgment, to resolve the quality immunity question, courts engage in

18   a two-pronged inquiry.  *Tolan*, 134 S.Ct. at 1865.  The first prong concerns the question whether

19   the facts show a violation of a federal right, here, the Fourth Amendment.  *Id.*  As discussed

20   above, the court finds there is a genuine dispute of material fact as to the first prong.  The second

21   prong asks whether the right in question was "clearly established" at the time of the violation, the

22   shooting in this case.  *Id.* at 1866.  That determination hinges on "the salient question . . . whether

23   the state of the law . . . gave [Office Calhoun] fair warning that [his shooting of Belle] was

24   unconstitutional."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  "[U]nder either prong, courts may

25   not resolve genuine disputes of fact in favor of the party seeking summary judgment."  *Tolan*, 134

26   S. Ct. at 1866.  "[C]ourts should define the clearly established right at issue on the basis of the

27   specific context of the case," and "must take care not to define a case's context in a manner that

28   imports genuinely disputed factual propositions."  *Id.* (internal quotation marks omitted).

1    Here, the underlying facts that would otherwise allow the court to determine

2    whether Officer Calhoun's shooting under the circumstances was reasonable are disputed.

3    Therefore, the court cannot define the specific context of this case without impermissibly treating

4    the genuinely disputed facts as undisputed.  And that the court cannot do.  *Id.*  Specifically,

5    Officer Calhoun should have known that "the Fourth Amendment forb[ade] the killing of [Belle] .

6    . . when that [killing was] unnecessary . . . ."  *Hells Angels*, 402 F.3d at 977–78.  But because

7    there is a genuine dispute of material fact as to whether that killing was necessary, the court

8    cannot determine whether, as a matter of law, the federal right at issue was clearly established.

9    The court DENIES defendants' summary judgment motion as to plaintiffs' Fourth

10   Amendment unreasonable seizure claim.

11       D.      Fourth and Fifth Claims: Trespass to Chattels and Conversion

12   Invoking the self-defense privilege under California law, defendants argue

13   plaintiffs "cannot meet their burden on either a conversion or a trespass to chattels claim" because

14   "Officer Calhoun shot Belle in self-defense."  (ECF No. 29 at 16.)  Plaintiffs respond there is a

15   genuine dispute as to whether Officer Calhoun's shooting was reasonable.  (ECF No. 43 at 19.)

16       1.      Trespass to Chattels

17   At hearing, plaintiffs confirmed they were dismissing their trespass to chattels

18   claim.  The court GRANTS defendants' motion as to this claim.

19       2.      Conversion

20   Under California law, the tort of conversion is the wrongful exercise of dominion

21   over another's personal property.  *See Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489,

22   1507–08 (2008).  An action for conversion will lie only where the interference is substantial in

23   nature, so that a plaintiff may be able to recover the full value of the property, in essence forcing a

24   defendant to buy the property.  *See Zaslow v. Kroenert*, 29 Cal. 2d 541, 550 (1946).  "Dogs are

25   considered personal property."  *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1606 (2012).

26   However, the acts that would otherwise qualify as tortious interference with

27   possession of another's personal property may be privileged under California law.  One such

28   privilege is self-defense: A person "is privileged to commit an act which would otherwise be . . .

10

a conversion of a chattel . . . for the purpose of defending himself . . . ." *Church of Scientology v. Armstrong*, 232 Cal. App. 3d 1060, 1072 (1991) (quoting Restatement (Second) of Torts § 261). Under this privilege, to defend his or her own person, "an actor is privileged to make intentional invasions of another's . . . personalty when the actor reasonably believes that . . . invasion of his interests is reasonably probable, and the actor reasonably believes that the apprehended harm can be safely prevented only by the infliction of such harm upon the other." *Id.*

It is defendants' burden to show that no reasonable jury could find other than for them on their affirmative defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); *see also Calderone v. United States*, 799 F.2d 254, 258–59 (6th Cir. 1986) ("In assessing the sufficiency of evidence . . . the court must also consider the burden of proof on the issue and where it will rest at trial. . . . where the moving party has the burden—. . . the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." (citation omitted)).

Defendants argue plaintiffs' conversion claims cannot survive summary judgment because Officer Calhoun acted in self-defense in shooting Belle.  But defendants have not met their burden of showing there is no genuine dispute of material fact as to whether Officer Calhoun's shooting was reasonable, as discussed above.

The court cannot as a matter of law find Officer Calhoun acted in self-defense. The court DENIES defendants' summary judgment motion as to plaintiffs' conversion claim.

E.      Sixth Claim: Intentional Infliction of Emotional Distress ("IIED")

Defendants argue plaintiffs' IIED claim cannot survive summary judgment because plaintiffs cannot show Officer Calhoun's shooting was directed at plaintiffs; plaintiffs cannot demonstrate that Officer Calhoun's conduct was outrageous because Officer Calhoun acted in self-defense; and plaintiffs cannot show Officer Calhoun's conduct was intended to cause severe emotional distress.  (ECF No. 29 at 17–18.)

Plaintiffs respond the facts in the case can show Officer Calhoun acted "with a deliberate disregard of the probability that his actions would cause emotional distress"; and there is a genuine dispute as to whether Officer Calhoun acted in self-defense.  (ECF No. 43 at 19–20.)

11

In California, invasion of peace of mind is an independent tort, giving rise to liability. *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005). "[T]o state a [claim] . . . for intentional infliction of emotional distress[,] a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Id.* (internal quotation marks omitted). Defendants do not dispute factors three and four.

Conduct is said to be outrageous if it exceeds all bounds of decency; mere insults and indignities may not be sufficient. *See Berkley v. Dowds*, 152 Cal. App. 4th 518, 533 (2007). "Generally, conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at 533–34 (internal quotation marks omitted). "Whether conduct is outrageous is usually a question of fact." *Ragland v. U.S. Bank Nat. Assn.*, 209 Cal. App. 4th 182, 204 (2012).

To satisfy the second element, intentional or reckless conduct, a plaintiff must show either the defendant's conduct was primarily directed at the plaintiff or the defendant was aware of, but acted in reckless disregard of, the plaintiff and of the probability that the conduct would cause severe emotional distress. *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) ("It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.").

Because there is a genuine dispute of material fact as to whether Officer Calhoun was justified or acted reasonably in shooting Belle, defendants' self-defense argument cannot defeat the outrageousness element of the IIED claim. If the jury believes plaintiffs' testimony, then the jury may find Officer Calhoun's shooting of a friendly dog was outrageous where no exigent circumstances existed.

Because there is no evidence Officer Calhoun acted with the purpose of causing plaintiffs' emotional distress, plaintiffs cannot base their IIED claim on this theory. Rather, to

1   succeed plaintiffs must show Officer Calhoun "[was] aware of, but act[ed] with reckless disregard

2   of . . . [Ms. Gregory] and the probability that his conduct w[ould] cause severe emotional distress

3   to [Ms. Gregory.]" *Christensen*, 54 Cal. 3d at 905.  It is undisputed Ms. Gregory was home at the

4   time of the shooting (ECF No. 44 ¶ 40); Officer Calhoun knew from dispatch "the homeowners

5   wanted to speak with an officer to provide suspect information" (*id.* ¶ 16); Officer Calhoun knew

6   the nature of the call was not urgent (Calhoun Dep. 45:14–46:2, ECF No. 36-4); Officer Calhoun

7   accepted the call (ECF No. 44 ¶ 18); and Officer Calhoun went to Ms. Gregory's residence with

8   the purpose of talking to her (*id.* ¶ 17).  There is evidence that at the time of the shooting, Ms.

9   Gregory was working with her back towards the window that faced the yard where the shooting

10  occurred.  (*Id.* ¶ 43.)

11          Viewing the facts in the light most favorable to plaintiffs as the nonmoving parties,

12  a reasonable jury could find Officer Calhoun shot Belle in the presence of Ms. Gregory, knowing

13  she was in the vicinity.  *See Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856,

14  875 (2010).

15          The court DENIES defendants' summary judgment motion as to plaintiffs' IIED

16  claim.

17      F.      Seventh Claim: Violation of California Civil Code Section 52.1 ("Bane Act")

18          Defendants argue plaintiffs have no evidence of "threats, violence or intimidation"

19  to support a claim under the Bane Act.  (ECF No. 29 at 18.)  Plaintiffs respond Officer Calhoun's

20  unreasonable shooting "was a flagrant act of violence that serves as the basis of [p]laintiffs'

21  constitutional violation."  (ECF No. 43 at 20.)

22          The Bane Act prohibits any person from interfering by "threats, intimidation or

23  coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the

24  Constitution . . . ."  CAL. CIV. CODE § 52.1(a).  Although the Bane Act was initially considered to

25  apply to hate crimes only, the California Supreme Court subsequently broadened its application to

26  include any unconstitutional acts "so long as those acts were accompanied by the requisite threats,

27  intimidation, or coercion."  *Venegas v. Cnty. of L.A.*, 32 Cal. 4th 820, 843 (2004).  In *Venegas*, the

28  state Court allowed a Bane Act claim to accompany a section 1983 claim for an unreasonable

13

1   seizure.  *Id.* at 827.  After a recent California Court of Appeal decision, *Shoyoye v. County of Los*

2   *Angeles*, 203 Cal. App. 4th 947 (2012), federal district courts have reached different results in

3   trying to answer the question whether a plaintiff bringing a Bane Act claim must introduce

4   independent evidence showing threats, intimidation, or coercion, in addition to showing a

5   constitutional violation.  *Davis v. City of San Jose*, No. 14-02035, 2014 WL 4772668, *6 (N.D.

6   Cal. Sept. 24, 2014) (collecting cases).  The court need not address the split because it finds there

7   is a genuine dispute as to whether Officer Calhoun's killing of Belle was reasonable under the

8   circumstances.

9          In *Shoyoye*, the California Court of Appeal faced the following question:

10  "[W]here coercion is inherent in the constitutional violation alleged, as it is in an unreasonably

11  prolonged detention, is the [Bane Act] satisfied or does the statute require a showing of coercion

12  independent from the coercion inherent in the wrongful detention itself?"  203 Cal. App. 4th at

13  958.  The court concluded:

14          [W]here coercion is inherent in the constitutional violation alleged,
            i.e., an over-detention in County jail, the statutory requirement of
15          "threats, intimidation, or coercion" is not met. The statute requires a
            showing of coercion independent from the coercion inherent in the
16          wrongful detention itself.

17  *Id.* at 959.

18         After *Shoyoye* was decided, the same California Court of Appeal decided *Bender*

19  *v. County of Los Angeles*.  There, the defendants raised the following argument: "[T]he Bane Act

20  does not apply because coercion is inherent in an unlawful arrest."  217 Cal. App. 4th 968, 978

21  (2013).  The *Bender* court concluded the defendants' contention had no merit.  *Id.*  It

22  distinguished *Shoyoye* factually, finding the Bane Act applied to the case before it "because there

23  was a Fourth Amendment violation—an arrest without probable case—accompanied by the

24  beating and pepper spraying of an unresisting plaintiff, i.e. coercion that is in no way inherent in

25  /////

26

27

28

14

1    an arrest, either lawful or unlawful." *Id.* It went on:

2          [A] wrongful detention that is "accompanied by the requisite
           threats, intimidation, or coercion"—"coercion independent from the
3          coercion inherent in the wrongful detention itself" that is
           "deliberate or spiteful"—is a violation of the Bane Act. To the
4          extent any language in the federal cases suggests otherwise, that
           language does not reflect California law.
5

6    217 Cal. App. 4th at 981 (internal citations omitted).

7          This case is similar to *Bender*. There is a genuine dispute whether Officer

8    Calhoun's killing of Belle was reasonable under the circumstances. As in *Bender*, where the

9    court found pepper spraying of an unresisting plaintiff was "in no way inherent in an arrest," 217

10   Cal. App. 4th at 978, here, a reasonable jury could find the shooting and killing of Belle was in no

11   way inherent in seizing Belle.

12         The court DENIES defendants' motion as to plaintiffs' Bane Act claim.

13   IV.   CONCLUSION

14         For the foregoing reasons, the court orders as follows:

15         1.  Defendants' Motion for Summary Judgment is GRANTED as to plaintiffs'

16             *Monell* and trespass to chattels claims.

17         2.  Defendants' Motion for Summary Judgment is DENIED as to plaintiffs'

18             Fourth Amendment unreasonable seizure, conversion, IIED, and Bane Act

19             claims.

20         IT IS SO ORDERED.

21   DATED: October 27, 2014.

22

23   _____

24                UNITED STATES DISTRICT JUDGE

25

26

27

28

                          15