Nick Casper (SBN 244637)
**CASPER, MEADOWS, SCHWARTZ & COOK**
A Professional Corporation
California Plaza
2121 North California Blvd., Suite 1020
Walnut Creek, California 94596
Telephone: (925) 947-1147
Facsimile: (925) 947-1131

Attorneys for Plaintiffs
ERIKA GREGORY and LOREN MOLLNER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA GREGORY and LOREN MOLLNER,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF VALLEJO; former VPD Chief ROBERT NICHELINI, individually and in His official capacity; VPD Officer CHASE CALHOUN, individually; and DOES 1 Through 50,<br><br>Defendants. | Case No. 2:13-CV-00320-KJM-KJN<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4**<br><br>JUDGE: Hon. Kimberly J. Mueller<br>CRTRM: 3, 15th Floor<br>TRIAL DATE: January 26, 2015 |

## INTRODUCTION

In their Motion in Limine No. 4, Defendants City of Vallejo and Chase Calhoun (collectively, "Defendants") seek to exclude all evidence relating to Calhoun's termination from Vallejo Police Department ("VPD"), including the underlying circumstances that resulted in his termination.

Plaintiffs oppose Defendants' Motion on the grounds that the evidence is relevant for purposes other than as inadmissible character evidence to show propensity. Specifically, the evidence directly bears on Calhoun's credibility – critical in any case, but particularly so in a

*Gregory, et al. vs. City of Vallejo, et al.*   Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4                         1

single-officer shooting case with no other eyewitnesses other than the involved officer.

The evidence is also relevant to the primary inquiry of the case: the objective reasonableness of Calhoun's use of force in shooting Belle. There exists significant circumstantial evidence that Calhoun was rushing to Plaintiffs' home after ignoring the call for service for over an hour, a habit of Calhoun's during precisely this time period, as revealed by the Internal Affairs investigation that culminated in his termination. Evidence that Calhoun was routinely missing calls for service due to misconduct while on his shifts during this time frame is admissible habit evidence probative of Calhoun's conduct on May 16, 2012.

## RELEVANT FACTUAL BACKGROUND

On December 2, 2013, Chase Calhoun was terminated from VPD. The termination was the result of an Internal Affairs Investigation ("IA"), conducted by Lieutenant Sid Dejesus ("Lt. DeJesus") into Calhoun's misconduct ranging from March 2012 until August 2013, during which time Calhoun was having sexual contacts with a woman, "Jane Roe," while Calhoun was on his patrol shifts, in remote locations, and frequently in his patrol vehicle.[1] Jane Roe ended the relationship and notified VPD of Calhoun's wrongdoing in August 2013 after she discovered that not only had Calhoun been married to another woman, of which Jane Roe was unaware, but that Calhoun was also seeing another woman during this timeframe. The IA charged Calhoun with seven violations of department policy; all seven charges were sustained by three superior officers, including Chief Kreins.

Chief Kreins, in his Notice of Discipline, states, "The nature and extent of you (sic) misconduct is shocking, which misconduct clearly was unbecoming and brought into disrepute the Department and its other personnel. Your actions demonstrate serious, repeated and perplexing failures in judgment that make you unfit to be a police officer."

### I.   FACTUAL ISSUES RELATED TO CALHOUN'S CREDIBILITY

Lt. DeJesus interviewed Calhoun, and Calhoun confirmed he began a sexual relationship with Jane Roe in March 2012. Lt. DeJesus remarked in the IA Report that

---

[1] Pursuant to the Court's August 20, 2014 Order denying Plaintiffs' request to seal (Dkt 42), the identity of third parties will remain confidential.

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4                        2

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

"Officer Calhoun appeared to me to have selective memory loss in relation to the frequency of his sexual contacts with [Jane Roe], and specific dates related to the same." Lt. DeJesus stated that "Officer Calhoun would attempt to minimize the time that it would take for him to complete these sexual acts by describing the duration of time as lasting only 10 to 15 minutes at a time." Calhoun did confirm that he would take Jane Roe to Mare Island for these encounters. Lt. DeJesus states that Calhoun appeared "to minimize the amount of times he and [Jane Roe] would actually have sexual intercourse while in a police car on Mare Island . . ."

Calhoun only admitted to taking Jane Roe to the Mare Island Training Facility ("MITC") after Lt. DeJesus confronted him with a photograph of the location. When asked about having sex with Jane Roe at another remote location (VPD Traffic Office), Calhoun responded, "I've got to be honest, I can't recall having sex there." Calhoun denied missing calls for service, despite the statement of Sergeant B. Clark ("Sgt. Clark") that he was "routinely" missing calls for service.

## II.  FACTUAL ISSUES RELATED TO CALHOUN' HABIT OF NOT RESPONDING TO CALLS FOR SERVICE

From April 2012 through February 2013, Jane Roe lived at 1225 Santa Clara Street. From March 2, 2012 through January 9, 2013, Calhoun worked frequently as a solo beat officer assigned to "Beat 6," which Lt. DeJesus found of significance because Beat 6 is in close proximity to Jane Roe's house on Santa Clara Street. Calhoun was working as a solo beat officer assigned to "Beat 6" on May 16, 2012 when he shot and killed Belle.

During the time Jane Roe lived on Santa Clara Street, she and Calhoun had sexual intercourse while he was on duty once or twice a week. During this timeframe, the IA revealed that Calhoun took Jane Roe to remote locations to have sex while on his shift, including to a recycling center on Mare Island and to MITC.

Lt. DeJesus interviewed Sgt. Clark as part of the IA. The IA states, "Sergeant Clark spoke of Officer Calhoun having 'routinely' missed 'Calls for Service,' and how dispatch would need to 'advise a second time,' at which point Officer Calhoun would then answer for his designated CFS."

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4      3

In Lt. DeJesus's findings of a violation of Availability of Duty (VPD General Order B-1, III, B1.4), he states:

> During the course of the investigation, I was able to confirm the actual locations where Officer Calhoun would drive [Jane Roe] for the purpose of having sexual intercourse.  These locations were established to be in remote areas concealed from the general public where Officer Calhoun could assure himself of the privacy he would need to complete these sexual encounters.  The location on Mare Island near Alco Recycling, which is located on the furthest North-West corner of the Island, the PG&E substation in Glen Clove, and Gilcrest, would necessarily take Officer Calhoun out of service for extended periods and very likely resulted in missed or delayed responses to Calls for Service as confirmed by Sergeant B. Clark.
>
> Officer Calhoun would not advise Communications of his duty status changes which occurred each time he allowed [Jane Roe] into his police care which also took him out of service by his own action.

In Lt. DeJesus's findings of a violation of Duty Responsibilities (VPD General Order B-1, III, B1.14), he states:

> By virtue of Officer Calhoun taking himself out of service without lawful and/or reasonable justification, he was not in a position to respond expeditiously to calls for service either directed to him by Communications, or calls from other uniformed officers who may have needed assistance or backup, or from citizens of this City.  By virtue of him having an unauthorized civilian inside his police car, he was no longer in a position to respond and/or perform his duties in a prompt or safe manner.

## ARGUMENT

### I. THE EVIDENCE IS ADMISSIBLE FOR PURPOSES OF ATTACKING CALHOUN'S CREDIBILITY

Witnesses who take the stand put their character for truthfulness at issue.  As stated by the Ninth Circuit, "the technicalities surrounding impeachment tend to submerge the basic aim of all credibility rules: to admit evidence that enables the trier of fact to determine whether or not the witness is telling the truth. Where there is no act of 'telling,' there is no need to determine the credibility of the witness." *Urooj v. Holder* (9th Cir. 2013) 743 F.3d 1075, 1078, citing Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 607.03[1] (2d Ed. 1997).

Fed. R. Evid. 608 states, in part:

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4            4

> (a) Reputation or Opinion Evidence. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.
>
> (b) Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
>> (1) the witness; or
>>
>> (2) another witness whose character the witness being cross-examined has testified about.

Thus, under Rule 608(b)(1), a witness may be cross-examined about specific conduct that bears on the witness' character for truthfulness.  Furthermore, while Rule 608(b) prohibits the use of extrinsic evidence to attack a witness' character for truthfulness, it may be used for another relevant purpose, such as to contradict the witness' testimony at trial.  The Ninth Circuit made clear the distinction between the improper use of extrinsic evidence to show past acts of dishonesty, as prohibited by Rule 608(b), and the use of extrinsic evidence of past conduct for the purpose of impeachment by contradiction:

> On appeal, Higa urges that the agent and the lawyer should not have been allowed to testify, because this was use of extrinsic evidence to impeach Tamon by "specific instances of ... conduct," in violation of Federal Rule of Evidence 608(b). That is incorrect. Their testimony was not about something Tamon had done in the past, which would tend to show that he was a dishonest person. That would be impeachment by past conduct. Rather, the testimony was about what Tamon had said in the past, which would tend to show that his past accounts of what had happened differed from his present account. That is impeachment by prior inconsistent statements, or, as it is sometimes called, impeachment by contradiction. The judge did not abuse his discretion by rejecting the Rule 608 challenge to admissibility. "Rule 608(b) does not address whether extrinsic evidence is admissible under the theory of impeachment by contradiction." *United States v. Chu*, 5 F.3d 1244, 1249 (9th Cir.1993).

*United States v. Higa* (9th Cir. 1995) 55 F.3d 448, 451-52.

Also, Rule 608(a) allows for the admission of reputation or opinion evidence on a witness' character for untruthfulness.

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4         5

Here, the importance of Calhoun's credibility cannot be overstated. He was the sole eyewitness to a single-officer shooting of Plaintiffs' dog. The case rests entirely on the jury's evaluation of Calhoun's story that he responded to Plaintiffs' call for service in a timely manner, took the precautions he said he did prior to entering Plaintiffs' yard, and shot and killed Belle because he had a reasonable belief that he was under imminent threat of great bodily injury or death. There is no independent evidence that Belle was about to attack Calhoun: Calhoun was not bitten or otherwise touched by the dogs, and Belle had no history of aggression. The reasonableness of Calhoun's decision to kill Belle turns, in large part, on the credibility of his story.

As stated above, the evidence relating to the Internal Affairs investigation, and Calhoun's subsequent termination, bears directly on Calhoun's credibility. Calhoun's misdeeds which resulted in seven sustained violations of department policy and his termination – having sexual intercourse at remote locations distant from his patrol beat, while on duty, in uniform and in his patrol car – in and of themselves bear on his credibility. Calhoun's decision to have sexual encounters while on duty instead of fulfilling his duties as a police officer necessarily involved acts of dishonesty, as Calhoun concealed his activities and whereabouts from dispatch, his fellow officers, and from his supervisors. The only reason his misconduct came to light was Jane Roe's notification to VPD; officers interviewed in the IA purportedly had no idea of Calhoun's clandestine activities. In other words, from at least March 2012 until August 2013, he routinely held himself out to be doing what he was obligated to do (patrol his beat), when in fact, he was not.

Second, there is ample evidence that Calhoun was dishonest during the IA, even in the face of overwhelming evidence of his wrongdoing. In his interview of Calhoun, Lt. DeJesus found him "to have selective memory loss" related to pivotal pieces of information of his contacts with Jane Roe. He also found that Calhoun "would attempt to minimize" the length of time of his contacts with Jane Roe to an unbelievable degree. He admitted to taking Jane Roe to locations only after being confronted with photographs. He responded he couldn't "recall having sex" at other locations – once again, a difficult assertion to believe. Calhoun denied

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4           6

1  missing calls for service despite Sgt. Clark's statement that Calhoun "routinely" did so.

2  It bears noting that in their Motion, Defendants misapprehend the meaning of the term "selective memory loss," as used by Lt. DeJesus in the Internal Affairs report. Defendants state, "Officer Calhoun has no 'selective memory loss' in the present case, in fact his memory is vivid." Motion at p. 2. Selective memory loss, as used by Lt. DeJesus, is clearly a euphemism for Calhoun remembering certain details of his misconduct, but selectively, i.e., intentionally, failing to remember other details in a convenient and self-serving way. As stated in *United States v. Seymour* (7th Cir. 2007) 472 F.3d 969, 970, "An omission can be as dishonest as an outright lie."

Calhoun will be testifying in the trial, both as an adverse witness in Plaintiffs' case-in-chief, and potentially during Defendants' case. Plaintiffs should be entitled to cross-examine Calhoun on his past misconduct at VPD that bears directly on his credibility. If Calhoun denies his conduct, Plaintiff should also be entitled to introduce extrinsic evidence of his past acts of dishonesty by way of impeachment by contradiction. Plaintiffs should also be entitled to offer reputation or opinion evidence on Calhoun's character for truthfulness through Lt. DeJesus, Sgt. Clark (or another knowledgeable VPD supervisor), and Jane Roe. These witnesses may also be potential impeachment witnesses depending on Calhoun's testimony.

## II. THE EVIDENCE IS HABIT EVIDENCE RELEVANT TO THE REASONABLENESS OF CALHOUN'S CONDUCT

The evidence related to Calhoun's termination is also habit evidence relevant to Calhoun's conduct on May 16, 2012.

Evidence of a person's habit is admissible to prove conduct on a specific occasion in conformity with that habit, practice or custom. Fed. R. Evid. 406. "In deciding whether certain conduct constitutes habit, courts consider three factors: (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct." *United States v. Angwin* (9th Cir. 2001) 271 F3d 786, 799 (overruled on other grounds in *United States v. Lopez* (9th Cir. 2007) 484 F3d 1186, 1200, fn. 17).

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4     7

According to Calhoun's supervisor, Calhoun "routinely" missed calls for service from VPD, and that dispatch would need to advise him a second time. This habit lines up perfectly with the timing of the subject incident. The Internal Affairs investigation found that Calhoun met with Jane Roe one to two times per week, when he was working as a solo beat officer in Jane Roe's beat. The May 16, 2012 incident occurred in the middle of Calhoun's course of misconduct (he started seeing Jane Roe two months earlier), while Calhoun was working as a solo patrol officer in the same beat as Jane Roe. There is also evidence, per the CAD Log, that Calhoun delayed responding to the call for service for over one hour. The significance of Calhoun working as a solo patrol officer in Jane Roe's beat during a time when he was having encounters with her on his shifts and ignoring calls for service inevitably invokes the evidence underlying Calhoun's termination.

The evidence relating to Calhoun's whereabouts prior to responding to Plaintiffs' call is relevant to the critical inquiry in the case: the reasonableness of Calhoun's use of force. If Calhoun was rushing to Plaintiffs' residence after ignoring dispatch for over an hour – something that he routinely did – his state of mind may not have been focused on the call. This, in turn, bears on the reasonableness of his actions in responding to an approaching dog.

Since Calhoun was routinely meeting Jane Roe when he was working as a solo patrol officer in her beat during this time period, and he was working as a solo patrol officer in her beat on May 16, 2012, Plaintiffs should be entitled to introduce this habit evidence.

## III.   THE EVIDENCE CANNOT BE EXCLUDED UNDER RULE 403

Under the explicit language of Rule 403, evidence can only be excluded under this discretionary rule if the probative value is "substantially outweighed" by specific enumerated risks. When the probative value and the danger of prejudice, confusion, etc... are of relatively equal weight, the evidence should be admitted. *Blancha v. Raymark Industries* (3rd Cir. 1992) 972 F.2d 507.

"Rule 403 is an 'extraordinary remedy' . . . whose major function ... is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. The Rule carries a 'strong presumption in favor of admissibility.'" *U.S. v.*

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4         8

1  *Grant* (11th Cir. 2001) 256 F.3d 1146, 1155 (internal citations omitted).

2  The sole fact that evidence is "prejudicial" is not grounds for exclusion, as most evidence is prejudicial to the party against whom it is offered.  "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *United States v. Winkle* (6th Cir. 2007) 477 F.3d 407, 417; see also *United States v. Benedetti*, (1st Cir. 2005) 433 F.3d 111, 118 ["trials were never meant to be antiseptic affairs" and that "it is only unfair prejudice, not prejudice per se, against which Rule 403 guards."]

When credibility is a critical inquiry, probative evidence relating to a witness' credibility can overcome a Rule 403 objection. *U.S. v. Grant, supra,* 256 F.3d at 1155-56 (finding the admission of a witness' prior inconsistent statement under Rule 806 is not excludable under Rule 403.)

Here, as stated repeatedly, Calhoun's credibility is not merely a collateral issue in the case; it is the case.  Calhoun's VPD career lasted less than two years, in which he engaged in a persistent course of dishonest conduct by misrepresenting his whereabouts while on shifts.  When he was finally confronted about this misconduct, he was dishonest in the investigation.  He was ultimately terminated after numerous sustained conduct violations.  The jury cannot make anything resembling an accurate determination of Calhoun's credibility without this admissible evidence.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion in Limine No. 4 should be denied.


Dated: January 13, 2014                         */s/* - "Nick Casper"
                                                Nick Casper
                                                **CASPER, MEADOWS, SCHWARTZ & COOK**
                                                Attorneys for ERIKA GREGORY and
                                                LOREN MOLLNER

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4                    9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Gregory, et al. vs. City of Vallejo, et al.*     Case No. 2:13-CV-00320-KJM-KJN     Page 1
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT