1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ERIKA GREGORY and LOREN           No.  2:13-cv-00320-KJM-KJN
    MOLLNER,
12
              Plaintiffs,
13                                     FINAL PRETRIAL ORDER

14          v.

    CITY OF VALLEJO; former VPD CHIEF
15  ROBERT NICHELINI, individually and in
    his official capacity; VPD OFFICER
16  CHASE CALHOUN, individually; and
    DOES 1 through 50,
17
              Defendants.
18

19          On January 8, 2015, the court conducted a final pretrial conference.  Nicholas Casper

20  appeared for plaintiffs Erika Gregory and Loren Mollner; Furah Faruqui appeared for defendants

21  City of Vallejo, Robert Nichelini, and Chase Calhoun.

22          After hearing, and good cause appearing, the court makes the following findings and

23  orders:

24  JURISDICTION/VENUE

25          Jurisdiction is predicated on 28 U.S.C. § 1331.  Jurisdiction and venue are not contested.

26  /////

27  /////

28  /////

1

1    JURY/NON-JURY

2          The parties have requested a jury trial.  Having reviewed the parties' position, the court

3    has determined the jury shall consist of eight persons.

4    UNDISPUTED FACTS

5          1.   In 2007, Chase Calhoun was hired as a police cadet (a non-sworn employee) by the

6               Vallejo Police Department (VPD).

7          2.   Chase Calhoun's police cadet duties consisted of working with the traffic division and

8               providing security at Mare Island and other adjunct locations.

9          3.   Chase Calhoun attended the Alameda County Sheriff's Department Police Academy

10              from 2009–2010.

11         4.   After completing the academy, Chase Calhoun was employed by the Alameda County

12              Sheriff's Department as a Sheriff's Deputy.

13         5.   In 2011, Chase Calhoun departed Alameda County and joined the VPD.

14         6.   After Chase Calhoun completed the field training program, he was assigned to

15              patrol.

16         7.   Plaintiffs Erika Gregory and Loren Mollner are a married couple with two children

17              under the age of ten.

18         8.   Gregory operates her own consulting business in San Francisco with seven employees,

19              and Mollner is employed by the U.S. Coast Guard under the U.S. Department of

20              Homeland Security as a real property specialist.

21         9.   Plaintiffs own a home at 47 Kentucky Street in Vallejo, where they lived from 2002

22              until July 2012.

23         10.  At the time of the incident, plaintiffs owned three dogs: fourteen-year-old Flicka,

24              eleven-year-old Belle, and Holly, a puppy.

25         11.  Belle was a Labrador-Catahoula-mix that weighed approximately 70 pounds, and

26              Flicka was a blind and deaf Border Collie-mix that weighed approximately 40 pounds.

27         12.  Plaintiffs had owned both Belle and Flicka since they were puppies, having gotten

28              Belle since she was about nine weeks old.

13. On Thursday or Friday, May 10 or 11, 2012, Erika Gregory was traveling for work and learned that her personal bank account had been overdrawn.  After looking at copies of deposited checks online, Gregory discovered that someone had stolen six or seven checks from her personal checkbook and fraudulently written and signed these checks in an amount totaling approximately $5,000.

14. Gregory contacted her bank (Umpqua Bank) to report the theft, and an assigned bank investigator instructed her to file a report with VPD to increase the chances of bank reimbursement.

15. On May 16, 2012, Chase Calhoun was on duty starting at 7 a.m. and was by himself and not working with a partner that shift.

16. During Chase Calhoun's entire employment with the VPD, he received several commendations.

17. That day, Chase Calhoun's attire consisted of a full police uniform, a utility belt, handcuffs, a gun and holster, a Taser, pepper spray, a baton, magazines in a magazine pouch, and radio.

18. The shift was not Calhoun's regularly-assigned shift, but was an extra, overtime shift.

19. Chase Calhoun recalls that he was in his car when he was dispatched to 47 Kentucky Street, but does not recall where in the city he was at the time.

20. Chase Calhoun was informed by dispatch that plaintiffs wanted to "speak with an officer to provide suspect information."

21. Calhoun looked up the report number through the computer system in his patrol car and determined that a police officer had not made a report on the incident yet, but was aware that a prior report had been made by the reporting party, such as through the VPD's online system.

22. Calhoun had not had any involvement with Gregory's theft report prior to the call for service.

23. Calhoun was aware that he was not responding to a crime in progress, and that he was following up on a prior report involving a theft from a bank account.

3

24. He did not confirm that Gregory was expecting the VPD to send an officer to her property to take a report, but states, "[u]sually when people call the police to report a crime, they expect us to respond."

25. Upon arrival to the property, Chase Calhoun parked his patrol car in front of the residence and walked up to the front of the property.

26. Chase Calhoun noticed that the property was a corner lot and the entire front yard of the home was surrounded by a low white fence with an unlocked gate.

27. Plaintiffs' home in fact was situated on the corners of Kentucky and Trinity Streets, and was surrounded by a low white picket fence.

28. The property had two entrances, with the front patio and yard accessed through a wooden gate on Kentucky Street.

29. The gate led to a short cobbled path, opening up to the front patio.  Continuing straight led to plaintiffs' front yard and house, with the front door located on the wrap-around porch approximately twenty feet from the gate.

30. Plaintiffs "regularly had friends visit and enter the yard."

31. "Delivery and utility employees would periodically enter plaintiffs' property," including an individual who made weekly deliveries of fresh vegetables onto the front porch.

32. Chase Calhoun entered the yard and started walking towards the front door.

33. Chase Calhoun states the following occurred: he recognized that the dogs "didn't appear to be friendly"; he noticed the dogs snarling; he observed that the hairs on their backs were raised and that their tails were straight; he determined that the dogs "were going to attack me"; he retreated five or six feet toward the gate; and he fired two shots, killing the lead dog, Belle.

34. The holster Calhoun used on that date was a "Level 3" holster, which requires the release of two snaps and rocking the gun forward to release it – the "triple threat" holster."

35. Calhoun fired two shots, striking Belle in the snout and through the mouth and throat.

36. The other dog, Flicka, ran away after he shot Belle.

37. Calhoun says that he shot Belle at "point-blank range" because she was "getting ready to" leap up and bite him.

38. Calhoun does not recall if the dog had "jumped or . . . was starting to jump."

39. Neither dog bit Calhoun.

40. Chase Calhoun immediately radioed dispatch to report the incident and requested that Animal Control respond to the scene.

41. After hearing the gun fire, Ms. Gregory rushed out of her home.

42. Chase Calhoun apologized for fatally wounding Belle.

43. Chase Calhoun is the only eyewitness to the event.

44. At the time Chase Calhoun entered the yard, Erika Gregory was working at her computer in her home office.

45. Erika Gregory was sitting at her desk, with her back to the window that faced the wraparound porch and front yard.  Erika Gregory was not an eyewitness to the shooting.

DISPUTED FACTUAL ISSUES

1.   Whether Chase Calhoun responded to the initial call for service to plaintiffs' residence in a timely manner, or was rushing from a location and/or activity unrelated to his work?

2.   Whether Chase Calhoun took reasonable precautions to ensure there were no dogs on plaintiffs' property before entering the yard?

3.   Whether Belle was rushing toward Chase Calhoun in an aggressive posture, indicating that she was going to attack him?

DISPUTED LEGAL ISSUES

1.   Whether Chase Calhoun's shooting of Belle was objectively unreasonable under the totality of the circumstances, and thus a violation of plaintiffs' rights under the Fourth Amendment, or was objectively reasonable, and thus a lawful use of force?

/////

2.   Whether Chase Calhoun's actions amounted to the tort of conversion under California law?

3.   Whether Chase Calhoun's conduct was outrageous and was committed with a deliberate disregard of the probability that his actions would cause plaintiffs emotional distress?

4.   Whether Chase Calhoun deprived plaintiffs of their civil rights by threats, force, or coercion?

5.   Whether Chase Calhoun acted with malice, fraud, or oppression?

SPECIAL FACTUAL INFORMATION

None.

DISPUTED EVIDENTIARY ISSUES

Defendants have filed the following motions *in limine*:

1.   Defendants' motion *in limine* to exclude evidence of other complaints and incidents.

2.   Defendants' motion *in limine* to exclude evidence and testimony inconsistent with the court's prior rulings.

3.   Defendants' motion *in limine* to exclude evidence of potential indemnification.

4.   Defendants' motion *in limine* to exclude any evidence related to Chase Calhoun's termination from the VPD.

5.   Defendants' motion *in limine* to exclude any photographs of plaintiffs' deceased dog Belle.

Plaintiffs have not filed any motions *in limine*, but they oppose defendants' motions.

STIPULATIONS/AGREED STATEMENTS

The parties stipulate to the following:

1.   During the course of the incident of May 16, 2012, Chase Calhoun was acting under color of law.

/////

/////

/////

2.  Any item on the parties' exhibit list requiring authentication by a custodian of records is stipulated to be authentic.  This does not mean that any document is admissible; however, custodians of records need not be called at trial merely to authenticate documents.

3.  The parties stipulate to exclude any evidence or refer to any draft reports prepared by the parties' retained experts, and further agree not to suggest or infer that any such draft reports were submitted to counsel for "editorial assistance" before disclosures of expert witnesses under Federal Rule of Civil Procedure 26.

4.  The parties stipulate to exclude any evidence or refer to any media articles, media publications, or media broadcasts about the subject incident.

5.  The parties stipulate to exclude evidence concerning, or making reference to, the parties' prior settlement negotiations, if any, in the instant matter.

6.  The parties stipulate to exclude all non-party, non-expert witnesses from the courtroom and to instruct all witnesses to refrain from discussing the case with other witnesses.

7.  The parties stipulate to refrain from making requests for new discovery or stipulations, and from making or discussing trial motions in front of the jury.

8.  The parties stipulate to proposing to the court the use of agreed CACI Jury Instructions for plaintiffs' state law claims.

9.  The parties stipulate not to display any exhibits prior to securing permission from the court or a stipulation from opposing counsel.

RELIEF SOUGHT

Plaintiffs seek special, general, and punitive damages, reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and California Civil Code §§ 52 and 52.1, and costs of suit.

Defendants seek that plaintiffs take nothing and that they be awarded costs of defending the lawsuit.

/////

/////

7

1  <u>POINTS OF LAW</u>

2        The parties shall alert the court to disputes about the applicable law and legal standards.

3  The primary legal dispute is whether Chase Calhoun's shooting and killing of plaintiffs'

4  dog was a reasonable seizure under the Fourth Amendment.  Trial briefs addressing these points

5  more completely shall be filed with this court no later than seven days prior to the date of trial in

6  accordance with Local Rule 285.

7  <u>ABANDONED ISSUES</u>

8        Plaintiffs will not pursue their claims for trespass and trespass to chattels, and their claim

9  under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

10  Accordingly, the court hereby confirms the dismissal of those claims with prejudice.

11  <u>WITNESSES</u>

12        Plaintiffs' witnesses are identified on Attachment 1 to this order.

13        Defendants' witnesses are identified on Attachment 2 to this order.

14        Each party may call any witnesses designated by the other.

15        A.    The court will not permit any other witness to testify unless:

16              (1) The party offering the witness demonstrates that the witness is for the purpose

17              of rebutting evidence that could not be reasonably anticipated at the pretrial

18               conference, or

19              (2) The witness was discovered after the pretrial conference and the proffering

20              party makes the showing required in "B," below.

21        B.    Upon the post pretrial discovery of any witness a party wishes to present at trial,

22  the party shall promptly inform the court and opposing parties of the existence of the unlisted

23  witnesses so the court may consider whether the witnesses shall be permitted to testify at trial.

24        The witnesses will not be permitted unless:

25              (1) The witness could not reasonably have been discovered prior to the

26              discovery cutoff;

27              (2) The court and opposing parties were promptly notified upon discovery of the

28              witness;

(3) If time permitted, the party proffered the witness for deposition; and

(4) If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

EXHIBITS, SCHEDULES AND SUMMARIES

Plaintiffs' exhibits are identified on Attachment 3 to this order.  At trial, plaintiffs' exhibits shall be listed numerically.

Defendants' exhibits are identified on Attachment 4 to this order.  At trial, defendants' exhibits shall be listed alphabetically.

The court encourages the parties to generate a joint exhibit list to the extent possible. Joint Exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.

All exhibits must be premarked.

The parties must prepare exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above.  Each binder shall have an identification label on the front and spine.

The parties must exchange exhibits no later than twenty-eight days before trial.  Any objections to exhibits are due no later than fourteen days before trial.

A.  The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

1.  The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

2.  The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in Paragraph "B," below.

B.  Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits so that the court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

1.  The exhibits could not reasonably have been discovered earlier;

2.  The court and the opposing parties were promptly informed of their existence;

9

3. The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

DEPOSITION TRANSCRIPTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than fourteen days before trial.

FURTHER DISCOVERY OR MOTIONS

None.

AMENDMENTS/DISMISSALS

Plaintiffs dismiss former Chief Nichelini as part of their abandonment of their *Monell* claims.

SETTLEMENT

A settlement conference was held before Magistrate Judge Carolyn K. Delaney on December 18, 2014, but the case did not settle. The parties do not believe further court-convened settlement discussions would be productive.

MOTIONS IN LIMINE

Motions *in limine* will be decided on the first day of trial. As discussed at the pretrial conference, the parties are required to meet and confer before filing any motions *in limine*. Each ruling on a motion will be made without prejudice and is subject to proper renewal, in whole or in part, during trial. If a party wishes to contest a pretrial ruling, it must do so through a proper motion or objection, or otherwise forfeit appeal on such grounds. *See* Fed. R. Evid. 103(a); *Tennison v. Circus Circus Enters., Inc*., 244 F.3d 684, 689 (9th Cir. 2001) ("Where a district court makes a tentative in limine ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial.") (alteration, citation and quotation omitted). In addition, any challenges to expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) will be denied without prejudice. Should a party wish to renew a *Daubert* challenge at trial, it should

1    alert the court, at which point the court may grant limited voir dire before such expert may be

2    called to testify.

3    JOINT STATEMENT OF THE CASE

4         The parties offer the following joint statement for use during voir dire and in preliminary

5    jury instructions:

6         This lawsuit arises out of the alleged wrongful shooting of plaintiffs Erika Gregory and

7    Loren Mollner's dog.

8         Defendants are Chase Calhoun, a former Vallejo Police Officer, and City of Vallejo.

9    The incident that gave rise to this litigation occurred during the day on May 16, 2012, at

10   plaintiffs' home in Vallejo.  Plaintiffs allege that defendants violated their Fourth Amendment

11   rights under the U.S. Constitution for an alleged wrongful shooting of their dog.

12        Defendants deny plaintiffs' allegations and allege that their conduct was lawful.

13   SEPARATE TRIAL OF ISSUES

14        The parties do not seek to bifurcate any portion of the trial.

15   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

16        The parties do not seek the appointment of an impartial witness.

17   ATTORNEYS' FEES

18        Plaintiffs seek attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code

19   §§ 52 and 52.1, and anticipate doing so in conformity with the procedures set forth under Local

20   Rule 293 and Federal Rule of Civil Procedure 54.

21   ESTIMATED TIME OF TRIAL/TRIAL DATE

22        Jury trial is set for January 26, 2015 at 9:00 a.m. in Courtroom Three before the

23   Honorable Kimberly J. Mueller.  Trial is anticipated to last five to seven days.  The parties are

24   directed to Judge Mueller's trial schedule outlined at the "important information" link located on

25   her web page on the court's website.

26   PROPOSED JURY VOIR DIRE AND PROPOSED JURY INSTRUCTIONS

27        The parties shall file any proposed jury voir dire seven days before trial.  Each party will

28   be limited to ten minutes of jury voir dire.

1    The court directs counsel to meet and confer in an attempt to generate a joint set of jury

2    instructions and verdicts.  The parties shall file any such joint set of instructions fourteen days

3    before trial, identified as "Jury Instructions and Verdicts Without Objection."  To the extent the

4    parties are unable to agree on all or some instructions and verdicts, their respective proposed

5    instructions are due fourteen days before trial.

6    Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed

7    or disputed, as a word document to kjmorders@caed.uscourts.gov no later than fourteen days

8    before trial; all blanks in form instructions should be completed and all brackets removed.

9    Objections to proposed jury instructions must be filed seven days before trial; each

10   objection shall identify the challenged instruction and shall provide a concise explanation of the

11   basis for the objection along with citation of authority.   When applicable, the objecting party

12   shall submit an alternative proposed instruction on the issue or identify which of his or her own

13   proposed instructions covers the subject.

14   MISCELLANEOUS

15   Trial briefs are due seven days before trial.

16   OBJECTIONS TO PRETRIAL ORDER

17   Each party is granted fourteen days from the date of this order to file objections to the

18   same.  If no objections are filed, the order will become final without further order of this court.

19   DATED:  January 15, 2015.

20

21

22   UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

12

## ATTACHMENT 1 – PLAINTIFFS' WITNESS LIST

1. Erika Gregory

   Nature of Testimony: Party to the action and percipient witness to the May 16, 2012 incident.  Ms. Gregory will testify to the subject incident, Belle's demeanor, and her damages.

2. Loren Mollner

   Nature of Testimony: Party to the action and percipient witness to events after the shooting of May 16, 2012.  Mr. Mollner will testify to the subject incident, Belle's demeanor, and her damages.

3. Elizabeth Coudright

   Nature of Testimony: Ms. Coudright was plaintiffs' tenant living in the back unit of the house.  Ms. Coudright cared for plaintiffs' dogs when plaintiffs were away, and has knowledge of plaintiffs' dogs (including of Belle's temperament).  Ms. Coudright also has knowledge of plaintiffs' damages.

4. Jan Gregory

   Nature of Testimony: Ms. Gregory is Erika Gregory's mother, and has knowledge of plaintiffs' dogs (including of Belle's temperament).  Ms. Gregory also has knowledge of plaintiffs' damages.

5. Alexa Gregory

   Nature of Testimony: Ms. Gregory is plaintiff Erika Gregory's sister, and has knowledge of plaintiffs' dogs (including of Belle's temperament) and of plaintiffs' damages.

6. Fiona Hovenden

   Nature of Testimony: Ms. Hovenden is plaintiff Erika Gregory's business partner.  Ms. Hovenden has knowledge of plaintiffs' damages.

/////

/////

/////

7.  Aidan Robson, Doggy Detail

> Nature of Testimony: Mr. Robson is plaintiffs' dog walker, neighbor and family friend who took care of Belle for years when plaintiffs were away.  Mr. Robson has knowledge of plaintiffs' dogs, including of Belle's temperament.

8.  Dr. Valerie Christiansen, DVM

> Nature of Testimony: Dr. Christiansen was plaintiffs' veterinarian and will testify to her prior treatment of Belle, and her examination of Belle on May 16, 2012 after the shooting. Dr. Christiansen will testify that Belle was not an aggressive dog based on her expertise in handling dogs as a veterinarian.  She will also testify that Belle suffered 2 gunshot wounds to her lateral cervical region and her nasal cavity.

9.  Chase Calhoun

> Nature of Testimony: Party to the action. Calhoun will testify to the events on the day of the question.

10. Sgt. B. Clark

> Nature of Testimony: Sgt. Clark was one of defendant Calhoun's supervisors during the relevant time period, and can testify to Calhoun's habit of not being available to dispatch during Calhoun's shifts and responding late to calls for service during the time of the subject incident.

11. Joseph Kreins

> Nature of Testimony: Chief Kreins can testify to Calhoun's termination, and can testify to Calhoun's misconduct that occurred during the relevant time period, including Calhoun's habit of not being available to dispatch during Calhoun's shifts, responding late to calls for service during the time of the subject incident, and issues bearing on Calhoun's credibility, reputation and habit.

/////

/////

/////

/////

14

12. Lt. Sid DeJesus

      Nature of Testimony: Lt. DeJesus conducted the Internal Affairs investigation into Calhoun's misconduct that occurred during the relevant time period, including Calhoun's habit of not being available to dispatch during Calhoun's shifts, responding late to calls for service during the time of the subject incident, and issues bearing on Calhoun's credibility, reputation and habit.

13. Jane Roe

      Nature of Testimony: Jane Roe had a relationship with defendant Calhoun during the relevant time period, ultimately resulting in Calhoun's termination from VPD, and can testify to matters that bear directly on material issues in this case.

## <u>ATTACHMENT 2 – DEFENDANTS' WITNESS LIST</u>

1. Chase Calhoun

   Nature of Testimony: Calhoun will testify to the events on the day of the question.

2. Jared Zwickey

   Nature of Testimony: Will testify regarding police practices in investigation, warrantless entry, use of deadly force in lieu of use of force, supervision, training and discipline of officers, including any and all VPD policies, rules, and/or regulations, regarding investigation, use of force, training, and tactics, relevant to plaintiffs' claims and defendants' defenses.

3. Lieutenant Sid DeJesus

   Nature of Testimony: Will testify to Calhoun's termination.

4. Captain James O'Connell

   Nature of Testimony: Will testify to Calhoun's termination.

5. Chief Joseph Kreins

   Nature of Testimony: Will testify to Calhoun's termination.

## ATTACHMENT 3 – PLAINTIFFS' EXHIBIT LIST

1. Photograph of Belle.

2. Photograph of Belle and Flicka.

3. Photograph of plaintiffs' daughter with Belle.

4. Photograph of plaintiffs' children with Belle.

5. Photograph of plaintiffs' family with Belle and Flicka.

6. Photograph of Erika Gregory with Belle.

7. Video of Belle.

8. Photograph of a portion of plaintiffs' fence surrounding their property at 47 Kentucky Street.

9. Photograph of a portion of plaintiffs' fence surrounding their property at 47 Kentucky Street (different angle).

10. Photograph of plaintiffs' gate from inside their property looking out toward Kentucky Street.

11. Photograph of plaintiffs' gate from inside their property looking out toward Kentucky Street (different angle).

12. Photograph of plaintiffs' gate from Kentucky Street looking into their property.

13. Photograph of plaintiffs' gate from Kentucky Street looking into their property (different angle).

14. Photograph of plaintiffs' gate from Kentucky Street looking into their property (different angle).

15. Photograph of the cobbled path from plaintiffs' gate leading into their property.

16. Photograph of the cobbled path from plaintiffs' gate leading into their property (different angle).

17. Photograph of plaintiffs' home and porch.

18. Photograph of plaintiffs' home and porch (different angle).

19. Photograph of plaintiffs' home and porch (different angle).

20. Photograph of the wire fencing attached to plaintiffs' picket fence along Kentucky Street.

21. Photograph of the wire fencing attached to plaintiffs' picket fence along Kentucky Street (different angle).

22. Photograph of Belle's point of rest in the yard.

23. Photograph of Belle's point of rest in the yard (different angle).

24. Photograph of Belle post-shooting.

25. Photograph of Belle post-shooting (different angle).

26. Notice of Discipline from former VPD Chief Kreins to Chase Calhoun, dated December 2, 2013.

27. VPD Internal Affairs Investigation Report # 2013-03.

28. CAD Log related to the May 16, 2012 incident.

29. Bayside Veterinary Hospital Report May 16, 2012.

30. X-Ray of Belle May 16, 2012.

31. Audio of dispatch recording.

## ATTACHMENT 4 – DEFENDANTS' EXHIBIT LIST

A.  Vallejo Police Department Incident Report #1206170.

B.  Photographs of plaintiffs' property.

C.  Demonstrative of location of incident.

D.  Vallejo Police Department Use of Force Policy.